Mary McNamara, SBN 147131
mary@smllp.law
Hannah Pollack, SBN 336599
hannah@smllp.law
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for Defendant SHANE CRATTY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHANE CRATTY,<br><br>Defendant. | No.    CR 19-0681 CRB<br><br>**DECLARATION OF JILL NUSSINOW IN SUPPORT OF DEFENDANT SHANE CRATTY'S MOTION FOR COMPASSIONATE RELEASE** |

I, Jill Nussinow, declare as follows:

1.  I am Shane Cratty's mother.  I submit this Declaration in support of my son's motion for compassionate release.  Except where asserted on information and belief, I have personal knowledge of the matters stated here, and, if called on to testify, I would testify competently to the contents of this declaration.

2.  Shane has serious mental health conditions, including major depressive disorder and oppositional-defiant disorder.  He has severe opioid use disorder.  When not using drugs and compliant with medication, Shane functions well.  When he uses drugs and is not compliant with medication, he becomes extremely anxious, lapses into delusional thinking (including experiencing auditory hallucinations) and becomes deeply depressed to the point of suicidality.

3.  Shane's criminal record is entirely the product of his drug addiction.  It comprises solely drug offenses (using or possessing drugs or selling drugs to feed his own addiction) or thefts to obtain the money for drugs.  He is not violent.

4.  Shane was born in Santa Rosa in 1993.  He was a regular kid until 9 or 10 years old, when he became difficult and oppositional.  We sought counseling as a family.  We feel like we had limited success.

5.  In 2005, the first notable crack in his behavior was in 7th grade, when he was expelled for having pocket knives in his backpack that he had forgotten to remove before going to school. He begged for a second chance in front of the school board but was refused. Due to this, we had to find another school for him to attend, which we did.  This event affected Shane more deeply than we realized.  He became anxious, withdrawn.

6.  In 2006, he did OK academically.  Unfortunately, at the end of the 8th grade year there was an incident which the school considered online bullying and he was expelled again, exacerbating his anxiety.

7.  In 2007, we found the Arts and Ethics Academy for him to attend in 9th grade, and it was there that Shane started associating with problem kids who were taking drugs. This is when his drug use began.  It intensified quickly.  He was only 14 years old.

**Decl. of Jill Nussinow ISO Defendant Shane Cratty's Motion for Compassionate Release**
*United States v. Shane Cratty* CR 19-681 CRB

8. At age 15, Shane passed his proficiency exam. Not long after, he was diagnosed with cyclic vomiting syndrome. The vomiting would last 24 to 48 hours, sometimes requiring emergency room visits. These episodes were harrowing for Shane and made it difficult for him to maintain a job.

9. At age 16, we helped Shane get a job performing car detailing. It was there that he hurt his back. He was also in a car accident around this time. We took him to his doctor and Shane was prescribed Oxycodone. As we later learned, this was the worst thing that could happen given Shane's already-formed dependency on drugs. Shane became addicted to prescribed opioids and became very depressed.

10. To give Shane some independence, we helped him rent a place to live close by so that we could stay in touch. We would see him to help him purchase groceries. He had a budget and stuck to it.

11. Shane got arrested at age 16 when he was found with drugs. We attended a 9-month Kaiser teen drug program and Shane did well. We all got counseling. Things seemed better.

12. However, after the program, Shane went back to using drugs again and was mentally unstable.

13. In 2013, after Shane served 8 months in jail for misdemeanor theft, someone recommended a "drug counselor," Dr. Diffenderfer, who told us that Shane should be medically detoxed—meaning he would be provided medication to manage withdrawal symptoms. He recommended Dr. Chiarottino and his pain clinic in San Rafael. While Shane was there, the facility was raided by the DEA and Shane was arrested for technically having broken probation due to the medications they had placed him on. He was remanded to jail, without detoxing. Both Dr. Diffenderfer, who was recognized by Sonoma County as a drug counselor and Dr. Chiarottino, were later sentenced to three years in prison for fraud in 2016. This was a terrible experience for Shane and it cost us a good deal of money.

14. Before Shane went to Dr. Chiarottino's clinic, the court had originally said that Shane could be in home confinement because of his medical conditions. The above debacle

3

**Decl. of Jill Nussinow ISO Defendant Shane Cratty's Motion for Compassionate Release**
*United States v. Shane Cratty* CR 19-681 CRB

landed Shane in jail instead of home confinement in 2014. Shane ended up in a mental cell in jail (similar to suicide watch) in April 2014. He was on high levels of drugs, prescribed by a doctor. He suffered both mentally and physically.

15. In 2016, after he was released, Shane went to the Olympia House for inpatient treatment for 30 days. He did well there from September 11th to October 14th. His counselor stated that he was diagnosed with major depressive disorder and oppositional defiant disorder, but that he responded well to appropriate treatment.

16. Within the next year, at age 23, Shane realized that going back to the Olympia House would be a good idea. He took money that he got from his grandfather and paid his own way there. Sadly, there was an altercation with his roommate within a week and everyone agreed it would be best if he left the program, which he did.

17. In 2016, 2017, and 2018 Shane was in and out of custody for substance use and probation violations.

18. Shane went to a number of short-term programs over the years: Salvation Army, Marin Services for Men, San Francisco place, Turning Point, Hope House (halfway house in Santa Rosa). He attended AA and NA meetings and we went with him a few times. He wanted to feel better, get better and stop doing drugs, but none of these programs was long enough to have a lasting effect.

19. What happened in September 2019, with the offense which caused this prison sentence, was something that Shane did not want to happen. He knew the person who bought the drugs and never thought that the outcome would be what it was.

20. After he was arrested, Shane ended up in Santa Rita jail and was there for over two years. During his time at Santa Rita, he seemed coherent and calm. As far as we know, he wasn't using drugs. We saw him a few times in person and then regularly on Zoom video calls. Medications were being administered by the medical staff there and he was stable.

21. In 2021, he was transferred to BOP Sheridan in Oregon. When he got to Sheridan, Shane told us that they discontinued all of his medications. After 5 or 6 days of asking for mental health help since he wasn't sleeping, he had a mental breakdown. They then

4

**Decl. of Jill Nussinow ISO Defendant Shane Cratty's Motion for Compassionate Release**
*United States v. Shane Cratty* CR 19-681 CRB

beat him and threw him in the SHU.  From that point on, it was clear based on our interactions with Shane the medical staff was not attending to his medical and mental health needs.

22.     With this in mind, we hired someone to help us transfer Shane to a better medical and mental health environment which we were told was Butner, in North Carolina.  It was supposed to have much better treatment abilities.  In the end, it did not.

23.     Shane wanted to be in the RDAP program. For some reason, he was never truly admitted to the RDAP program even though he attended sessions with others in the program and lived on the RDAP floor.  He got frustrated that they would not formally admit him.  He wanted to go to a halfway house or somewhere that would help with rehabilitation.

24.     We spoke with him regularly when he was attending RDAP.  He seemed clear and alert.  Then something happened and he got moved to a different unit, and things went badly from that point on.

25.     It was evident to us that Shane was getting and using drugs, which he had not been doing at Santa Rita.  We don't really know all the details but it seems that after a while outside of the RDAP unit, in June of 2025, Shane had a severe mental breakdown.  Shane had run into a fence.  After this incident, staff restrained him, beat him and put him in the SHU.  He was then on suicide watch and more.  He even saw someone die in the cell next to him in the early morning hours.  We were extremely worried about Shane's mental state and filed a motion with the court seeking help.  The court appointed counsel and they have been working with Shane ever since.

26.     The dual diagnosis treatment that was supposed to happen at Butner never happened.  Shane did not get the medical or mental help that he needed.

27.     Shane is now at a penitentiary called USP Canaan, in Pennsylvania, and has told us that he is not getting adequate medication.  He says that USP Canaan is very dangerous, the inmates are violent and that the other inmates have nothing and would kill someone for little reason.

28.     Since Shane's BOP incarceration, aside from the potential RDAP participation at Butner, there seems to have been little mental and physical, health support for Shane.  He has

mostly been depressed and unable to do much to pull himself out of it. He has a strong desire to be clean and sober. He is pleading to go to rehab and/or a halfway house.

29.    In the past few months, and especially recently, Shane has said that he will never go back to prison because the experience has been torturous.

30.    Upon Shane's release, we will be supportive of him as he transitions back to the community. We believe he needs long-term, residential treatment in order to work on his drug addiction and treat his underlying mental illnesses.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 20th day of February, 2026 at _Camila, CA_ .

_Jill Nussinow_

**Decl. of Jill Nussinow ISO Defendant Shane Cratty's Motion for Compassionate Release**
*United States v. Shane Cratty* CR 19-681 CRB