UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION



**FILED**

MAR 16 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHANE CRATTY,<br><br>Defendant. | No.　CR 19-0681 CRB<br><br>**DEFENDANT SHANE CRATTY'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REGARDING CONDITIONS OF CONFINEMENT** |

**TABLE OF CONTENTS**

Introduction And Emergency Nature Of The Motion ........................................... 3

Statement Of Facts.......................................................................................... 5

Legal Standard For Temporary Restraining Order And Preliminary Injunction ......................... 21

Argument.......................................................................................................... 23

I. The Court Should Issue Immediate Injunctive Relief Because The Record Shows That Bop's Withdrawal Of Treatment, Followed By Punitive Responses To Obvious Mental Decompensation, Has Created An Ongoing And Intolerable Risk Of Irreparable Harm .............23

II. The Record Supports A Strong Merits Showing That Bop Acted With Deliberate Indifference To Shane Cratty's Serious Medical And Mental-Health Needs ......................................25

III. The Court Should Find A Direct And Foreseeable Connection Between The Denial Of Medication/Treatment And The Disciplinary Cascade That Followed ......................................26

IV. The Disciplinary Sanctions And Loss Of Good-Conduct Time Are Especially Troubling Because They Appear To Flow From Untreated Mental Illness And Thus Threaten A Distinct Liberty Interest ......................................................................................................28

V. The Risk Of Irreparable Harm Is Not Speculative; It Is Present, Repeated, And Accelerating .........................................................................................................29

1

VI. The Balance Of Equities And The Public Interest Strongly Favor Intervention ............30

VII. This Court Should Treat The Present Motion As A Last Necessary Intervention To Prevent A Foreseeable Death Or Further Collapse ................................................................................30

VIII. Bop's Obstruction Of The Administrative Remedy Process Further Justifies Immediate Court Intervention ..........................................................................................................31

REQUESTED RELIEF .......................................................................................... 33

CONCLUSION .................................................................................................. 37

CERTIFICATE OF SERVICE................................................................................39

[PROPOSED] ORDER GRANTING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ........................................................................... 40

**TABLE OF AUTHORITIES**

**Supreme Court Cases**

Estelle v. Gamble, 429 U.S. 97 (1976)..........................................................................22

Farmer v. Brennan, 511 U.S. 825 (1994) .....................................................................22

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) ...........................22

**Ninth Circuit Cases**

Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011) ................................. 22

Clouthier v. County of Contra Costa, 591 F.3d 1232 (9th Cir. 2010) ....................................... 23

Conn v. City of Reno, 591 F.3d 1081 (9th Cir. 2010), vacated on other grounds, 563 U.S. 915 (2011) ......................................................................................................... 22

**Statutes**

18 U.S.C. § 3626 ...................................................................................... 23

**Rules**

Federal Rule of Civil Procedure 65 ........................................................................ 21

## INTRODUCTION AND EMERGENCY NATURE OF THE MOTION

1. This motion arises from an urgent and escalating threat to the life and mental stability of Defendant Shane Cratty. Mr. Cratty is a federally incarcerated individual with a well-documented history of serious mental illness, substance use disorder, and psychiatric vulnerability. Over the course of his incarceration within the Bureau of Prisons ("BOP"), the record reflects a pattern of deteriorating mental health that has been accompanied by repeated pleas for treatment, documented psychiatric crises, hunger strikes, and repeated expressions of suicidal ideation.

2. Rather than stabilizing his condition through appropriate psychiatric care, the record reflects that Mr. Cratty's deterioration accelerated after the discontinuation or denial of necessary medication and treatment. As his condition worsened, the institutional response described in the record increasingly took the form of disciplinary actions, isolation, transfers to harsher custodial environments, and the issuance of incident reports rather than sustained mental-health intervention.

3. The consequences of that trajectory are now severe and ongoing. Mr. Cratty has repeatedly reported suicidal thoughts and extreme psychological distress. He has described himself as unable to continue enduring his current conditions of confinement and has explicitly expressed fears that he may take his own life. Communications from Mr. Cratty to his parents and outside advocates reflect an individual experiencing profound psychological trauma, anxiety, and fear within an environment he perceives as violent, unstable, and life-threatening.

4. These concerns are not speculative. Mr. Cratty has reported witnessing extreme violence within his housing environment, including inmates being stabbed and seriously injured. He has reported observing the death of another inmate following what he perceived to be a

3

delayed or inadequate medical response. He has described being subjected to repeated lockdown conditions and restrictive housing placements that further limit his ability to access assistance, communicate with family and advocates, and pursue administrative remedies regarding his treatment and conditions of confinement.

5. The record further reflects repeated attempts by Mr. Cratty to pursue administrative remedies within the Bureau of Prisons regarding his treatment, safety, and conditions of confinement. Those efforts have been met with rejected filings, inconsistent responses, and procedural obstacles that have significantly hindered his ability to obtain meaningful relief through internal institutional channels.

As a result, the ordinary administrative mechanisms designed to address prisoner grievances have failed to resolve the escalating risk presented here. Meanwhile, Mr. Cratty's psychological deterioration continues.

6. This motion therefore seeks narrowly tailored injunctive relief to stabilize Mr. Cratty's psychiatric condition, prevent further deterioration, and protect him from the risk of irreversible harm while the Court considers the underlying issues presented by his case. Without intervention, the record demonstrates a substantial risk that Mr. Cratty's mental condition will continue to deteriorate to the point of catastrophic self-harm or suicide.

7. Federal courts possess both the authority and the responsibility to intervene where prison officials are deliberately indifferent to a substantial risk of serious harm to an inmate's health or safety. The circumstances described in the record meet that standard. The requested relief does not ask the Court to manage the day-to-day operations of a federal prison. Rather, it asks the Court to exercise its equitable authority under Federal Rule of Civil Procedure 65 to prevent irreversible harm to a prisoner whose life and mental stability are presently in jeopardy.

For these reasons, Mr. Cratty respectfully requests that the Court grant the Temporary
Restraining Order and Preliminary Injunction described below.

**STATEMENT OF FACTS**

1. Defendant Shane Cratty is a federal prisoner with a long history of serious mental illness, trauma, and substance use disorder. When properly medicated, sober, and supported, he has historically functioned more coherently and stably. When deprived of treatment or left psychiatrically unmanaged, however, he has decompensated, become highly anxious, suffered delusional thinking, and at times become suicidal.

2. Mr. Cratty's mother, Jill Nussinow, has already provided the Court with a sworn declaration describing his background, including his long struggle with major depressive disorder, anxiety, opioid use disorder, and repeated psychological destabilization when not properly treated.

3. According to Ms. Nussinow, when Mr. Cratty was housed at Santa Rita Jail and receiving medication administered by medical staff, he appeared coherent, calm, and stable.

4. Ms. Nussinow further explained that after Mr. Cratty entered Bureau of Prisons ("BOP") custody, his condition worsened substantially and the family became increasingly concerned that he was not receiving the medical and mental-health care he required When Mr. Cratty arrived at FCI Butner, he was seen by Dr. Kraft, who, according to Mr. Cratty, immediately discontinued his prescribed pain and inflammation medications, including gabapentin, lidocaine patches, Tylenol, and meloxicam, without first reviewing his medical records.

5. Mr. Cratty reports that Dr. Kraft told him, in substance, that because he was "only 30," he did not need those medications and that inmates merely sell medication on the yard.

Shortly after his arrival at FCI Butner, the warden began withholding inmate property, including books, magazines, and newspapers, purportedly due to drug-trafficking or security concerns.

6. Mr. Cratty sent written complaints challenging these seizures and the withholding of personal property and correspondence.

7. Two days after he sent those complaints, two case managers, identified by Mr. Cratty as Wright and McCoy, entered his cell early in the morning, searched only his locker area, and discarded or confiscated personal correspondence from family and friends, legal paperwork, books, his NRDAP group journal, and personal photographs from the preceding three years.

8. During that same search, staff also took copies of the messages Mr. Cratty had previously printed out showing the complaints he had sent to the warden.

9. Later in March 2025, Mr. Cratty suffered a vomiting episode in which he threw up blood and became severely dehydrated.

10. According to Mr. Cratty, Dr. Kraft initially ordered that he be sent back to the housing unit without adequate treatment, and he was only sent to the hospital because nursing staff and a physician assistant intervened.

11. On May 29, 2025, Mr. Cratty suffered another severe vomiting episode.

12. He reports that when he went to medical, nursing staff dismissed his symptoms as drug withdrawal and sent him back to the unit rather than arranging meaningful treatment. Later that same day, Mr. Cratty again began vomiting dark blood and pressed the duress button to summon emergency assistance.

13. Officer K. Davis responded, called him "whiteboy crazy," told him to stop pressing the button, and, after he pressed it again while reporting a medical emergency, issued him a 200-series incident report for "misusing a security device."

14. As a result of that incident report, Mr. Cratty was sent to the Special Housing Unit ("SHU") for four days without meaningful medical treatment.

15. Hematemesis, or vomiting blood, constitutes a serious medical event requiring prompt diagnostic evaluation and treatment.

16. On June 2, 2025, while in the SHU, Mr. Cratty informed staff that he was experiencing a mental-health crisis, which he believed was being exacerbated by solitary confinement and the lack of appropriate medical care.

17. Mr. Cratty reports that psychology intern Dr. Adams provided advice that was not therapeutic and instead affirmed his delusional thinking rather than arranging meaningful psychiatric intervention..

18. On June 3, 2025, after being released back to the unit while still in crisis, Mr. Cratty walked headfirst into a metal gate and then entered the lieutenant's office while mentally destabilized.

19. Mr. Cratty states that staff then dog-piled him, dragged him to the SHU, and placed him in an unauthorized and painful restraint position with both hands cuffed above his head using a single set of handcuffs in what he describes as a three-point restraint rather than an authorized four-point restraint.

20. He further reports that his clothes were cut off except for his boxers and that he was left in that position for several hours in significant pain.

21. Mr. Cratty states that an incarcerated worker, Coty Brewer, was present in or near the lieutenant's office during that incident and may have witnessed part of what occurred. Following the June 3 incident, staff issued Mr. Cratty an incident report charging him with assault without serious injury (attempt) and threatening bodily harm. Mr. Cratty has continued attempting to appeal that incident report and the resulting findings.

22. During this same period, Mr. Cratty was on common fare and reports that while in the SHU, staff removed his cereal from sealed packaging and placed it into unsealed plastic bags, rendering it non-kosher from his perspective and interfering with his religious practice.

23. Mr. Cratty also reports that during a walk-through, the warden insulted him directly, calling him "a little bitch and a pussy."

24. On June 9, 2025, after several days of telling SHU staff that he was in a mental-health crisis and needed psychology to be contacted, Mr. Cratty told staff that if they did not call psychology, he would cover his window to force a response.

25. He then covered the window with paper.

26. Lieutenant B. Hackett responded, threatened to enter the cell if the window was not uncovered, and after Mr. Cratty complied and submitted to restraints, forcefully grabbed his elbow and verbally berated him.

27. Mr. Cratty was then taken to a dry cell, where Lt. Hackett allegedly ran him into the back corner of the cell and stated, in substance, "this is my SHU" and that he could do whatever he wanted.

8

28. Mr. Cratty further reports that Lt. Hackett ordered him to strip completely naked, forced him to stand nude while insulting and humiliating him, and grabbed his left buttock. When Mr. Cratty stated he intended to file a PREA complaint, Lt. Hackett allegedly responded, "Good luck getting anyone to take it, this is my house."

29. Mr. Cratty was then placed in an observation cell for approximately eight hours. During the required medical assessment following the use of restraints, Mr. Cratty informed medical staff that he had been sexually abused and requested to file a PREA complaint.

30. Lt. Hackett subsequently issued another 200-series incident report for "misusing a security device," again based on conduct that arose directly from Mr. Cratty's efforts to obtain mental-health assistance.

31. Over the next approximately forty-eight hours, Mr. Cratty reported the sexual assault to multiple staff members before psychology took the PREA report.

32. Dr. J. Haughawout eventually took the PREA report.

33. The following day, according to Mr. Cratty, Lt. Hackett returned to the SHU range, stared into his cell, and told him, "I'm gonna get you for filing that PREA, bitch."

34. Fearing retaliation and physical harm, Mr. Cratty then reported suicidal ideation in order to be removed from proximity to Lt. Hackett, and he was placed on suicide watch. From approximately June 12 through July 10, 2025, Mr. Cratty remained on suicide watch under conditions that he describes as abusive, degrading, and destabilizing. During that time, he reports multiple uses of force by officers, psychological abuse by staff, denial of food on several occasions, denial of reading materials, denial of clothing except for boxers, denial of a proper shower for approximately twenty-one days, denial of

toilet paper on multiple occasions, and confinement in a room kept at approximately 50 to 55 degrees Fahrenheit.

35. Mr. Cratty further states that it took him roughly three weeks to obtain a Bible while on suicide watch.

36. During the night of June 15 into June 16, 2025, Mr. Cratty witnessed another incarcerated person, Darnell Fulton, die in the adjacent suicide-watch cell after repeatedly complaining of chest pain and breathing difficulty.

37. According to Mr. Cratty, staff responded slowly, failed to summon medical promptly, treated the event casually, and delayed meaningful intervention until far too late. Mr. Cratty specifically reported that one officer laughed and said, "Well, if he's dead, it's too late to do anything about it now."

38. Witnessing that event caused Mr. Cratty severe anxiety and reinforced his fear that if he suffered a medical emergency, he too might be left untreated.

39. On June 19, 2025, Mr. Cratty initiated a hunger strike, explaining that he required a soft diet because he had undergone numerous tooth extractions while in custody and could not properly chew ordinary food.

40. After approximately six days, staff weighed him at approximately 123 pounds. Dr. Rogers, who was covering for Dr. Kraft, consulted a dietician and approved a Level 6 soft and bite-sized diet.

41. Mr. Cratty also requested Ensure or similar supplementation until his weight improved, but according to his account, that supplementation was never provided.

42. Although staff verbally indicated they would comply with his approved dietary needs, Mr. Cratty states that the soft-diet accommodations were not timely implemented.

10

On or about June 27, 2025, in response to the conditions on suicide watch, including repeated denials of basic necessities and ongoing abuse, Mr. Cratty began another hunger strike.

43. On June 29, 2025, while Mr. Cratty was mostly unclothed and using the restroom, Dr. Haughawout entered his cell and stared at him in a manner that made him feel violated and unsafe.

44. Mr. Cratty objected and requested that another member of psychology staff be brought instead.

45. That same evening, Mr. Cratty reports that he was denied dinner.

46. When he later requested assistance regarding a clogged toilet and the missed meal, Lt. Harrison and Lt. Smith responded to his cell.

47. Mr. Cratty states that one lieutenant stepped on his foot, violently slammed him into the glass, and handcuffed him with excessive force.

48. Later that night, Officer Hargrove allegedly slammed Mr. Cratty's elbow in the tray slot multiple times when Mr. Cratty reached his arm out while requesting toilet paper and trying to speak with a lieutenant about the missed meal.

49. Mr. Cratty then developed severe chest pain lasting several hours and eventually lost consciousness.

50. He reports that staff delayed meaningful medical intervention and merely stood outside his cell and banged on the door for an extended period before eventually taking him to a medical exam room in a wheelchair.

51. Once there, nursing staff performed EKG testing without a physician present, and according to Mr. Cratty, the testing was at best inconclusive.

11

52. Mr. Cratty also informed medical staff about the bruised and painful elbow caused by Officer Hargrove's actions, but he was not given a proper medical assessment of that injury.

53. Instead, he was returned to suicide watch without meaningful treatment or full evaluation.

54. Also on or about June 29, 2025, after Dr. Eldridge "unauthorized" his blanket, officers and a lieutenant entered Mr. Cratty's cell to retrieve it.

55. Mr. Cratty states that staff lifted him from the mattress and slammed his head and knees against multiple walls several times.

56. He then fell into the shower area, which was damp, and while trying to regain his footing accidentally grabbed the rubber band on an officer's wrist.

57. Following that incident, Mr. Cratty was forcibly removed from suicide watch and placed in soft restraints in the SHU for approximately four to five hours.

58. He did not receive the related incident report for approximately seventy-two hours, which he contends violated BOP disciplinary procedures.

59. Throughout this period, Dr. Haughawout continued conducting daily sessions with Mr. Cratty despite his repeated objections and his stated intent to file a PREA complaint concerning her conduct as well.

60. Mr. Cratty states that Dr. Haughawout played a role in depriving him of a blanket and a Bible and repeatedly attempted to remove him from suicide watch even though he stated he feared for his life if returned to proximity with Lt. Hackett.

61. On July 1, 2025, according to Mr. Cratty, Dr. Haughawout urged him to end his hunger strike in exchange for reauthorization of his blanket.

62. From approximately July 1 through July 10, Mr. Cratty continued receiving meal trays that often did not comply with his approved medical diet.

63. On July 9, 2025, Mr. Cratty told Dr. Haughawout that he was hearing voices instructing him to kill her and other staff members, including the warden and lieutenants. Mr. Cratty states that he disclosed this because he feared acting on the hallucinations and was seeking psychiatric intervention to prevent harm.

64. Rather than treating the disclosure as a psychiatric emergency, Dr. Haughawout allegedly documented it as a disciplinary threat and omitted the context that Mr. Cratty had reported auditory hallucinations.

65. According to Mr. Cratty, institutional documentation from other sources reflected that he had indeed reported hearing voices directing him to commit the acts.

66. On July 10, 2025, the DHO attempted to proceed on four separate incident reports involving Mr. Cratty, including reports arising from the May 29 vomiting incident, the June 3 crisis episode, the June 9 window-covering event, and the July 9 hallucination disclosure.

67. Mr. Cratty informed the hearing officer that he was not mentally capable of understanding or defending himself in the proceedings.

68. Despite that, the proceedings went forward, and Mr. Cratty was found guilty on all but one of the charges.

69. Mr. Cratty further states that even though he remained traumatized, suicidal, and afraid of violent retaliation, Dr. Haughawout removed him from suicide watch anyway, and he was transferred back to the SHU.

70. From July 10 through July 20, 2025, Mr. Cratty continued to experience repeated problems with food and compliance with his approved soft diet.

71. On July 12, 2025, after being served the wrong meal tray and trying to request Lt. Price, Officer Hughes allegedly slammed the metal trap door on Mr. Cratty's wrist and shoved his hand back into the cell.

72. Despite visible bruising and swelling, medical staff refused to assess the injury During this same period, Mr. Cratty's mental condition continued to deteriorate. He reports that at one point he tried to cut his veins with a sharpened paperclip. He states that he told Officer Gladden he was suicidal and the officer did nothing.

73. He states that he told Officer Adcock the same thing and again received no response. He further states that when psychology later made rounds, he told Dr. Swann that he was suicidal and was ignored.

74. He remained in the SHU until approximately July 20, 2025.

75. Sometime between September 15 and September 25, 2025, Mr. Cratty experienced what he believes was a night terror or an acute mental-health episode in his cell.

76. His cellmate activated the panic button, and Officer Walker called a lieutenant. Mr. Cratty had rolled off the top bunk, fallen to the floor, and was extremely disoriented.

77. The lieutenant who responded was Lt. Hackett, the same staff member whom Mr. Cratty had previously accused of sexual abuse.

78. Mr. Cratty states that Hackett and two other officers then slammed him to the ground, punched him in the chest, and later pushed him while he climbed back onto the top bunk, causing his head to hit the wall.

79. He received no meaningful medical or mental-health evaluation afterward. Beginning in approximately August 2025 and continuing through September 2025, Mr. Cratty repeatedly attempted to file administrative remedies concerning staff abuse, PREA issues, and other misconduct, but according to him received no meaningful responses.

80. He further reports that the Mid-Atlantic Regional Office rejected his attempts to raise PREA-related claims in a BP-10.

81. On September 25, 2025, Mr. Cratty began another hunger strike after concluding that institutional staff were not acknowledging or addressing what was happening to him. On September 26, 2025, after telling staff he felt suicidal, Mr. Cratty was taken to psychology, where Dr. Shemin, Dr. Halbsgut, and psychiatrist Dr. Tryhubenko were present.

82. Mr. Cratty reported that he had not eaten since breakfast the day before, wanted the hunger strike documented, and was feeling suicidal.

83. According to Mr. Cratty, Dr. Halbsgut became confrontational and refused to document either the hunger strike or the suicidal ideation as required by policy.

84. After Mr. Cratty objected, compound staff were summoned, and he was taken to the lieutenant's office and placed in a dry cell.

85. Lt. Allen told him she would notify medical that he was not eating, after which he was returned to his unit.

86. Dr. Halbsgut subsequently issued an incident report charging him with insolence to a staff member.

87. Mr. Cratty states that the incident report was not delivered to him for more than seventy-two hours.

88. Mr. Cratty's hunger strike lasted approximately eleven days, and during that time he informed multiple lieutenants, including Lt. Reynolds, that he was not eating. Despite that, he reports that medical staff saw him only once, on September 30, 2025. Because staff were not documenting the hunger strike or conducting regular assessments, Mr. Cratty ended the strike on October 6, 2025.

89. On October 7, 2025, during the Jewish holiday of Sukkot, Mr. Cratty brought his breakfast to the sukkah tents, where incarcerated individuals were permitted to eat, pray, and study Torah.

90. Officer Hendricks confronted him and stated he was not allowed there.

91. Mr. Cratty responded that he was permitted to be there and asked not to be harassed or persecuted for practicing his religion.

92. Hendricks then attempted to order him to laundry so his medically authorized soft shoes could be confiscated.

93. Lt. Mion then escorted Mr. Cratty to a dry cell, where another officer, Diaz, accused him of trying to "check in" and called him a child molester.

94. After approximately thirty minutes, Lt. Reynolds returned him to his unit.

95. Throughout this same period, Mr. Cratty repeatedly asked his unit case manager, J. Wright, for receipts and tracking information concerning his administrative remedies, including when they had been received and when responses were due. Wright allegedly told him he could not provide that information and lacked access to the necessary documents.

96. On November 6, 2025, during a team meeting, Wright gave Mr. Cratty a team sheet and a sentence computation sheet listing his security level as medium.

97. During that same meeting, when Mr. Cratty asked when he should submit a cop-out seeking application of his First Step Act credits, Wright told him he could do so the following week and said nothing about any transfer or change in security status. The next day, however, Mr. Cratty was unexpectedly instructed to pack his property and report to Receiving and Discharge because he was being transferred. On November 12, 2025, he was placed on a bus to Atlanta. Upon arrival, an intake counselor informed him that he was being designated to a United States Penitentiary and that his security level had become high.

98. Mr. Cratty states that he was never given a meaningful explanation for that increase in custody level and remains unsure which factor caused the extra point to be assessed. Mr. Cratty further states that had staff properly responded to his administrative appeals and had any of the challenged incident reports been expunged or reduced, his score would likely have been lower and would not have supported a high-security designation.

99. The timing and circumstances of Mr. Cratty's transfer raise serious concerns of retaliation and denial of due process because the transfer followed his repeated attempts to file grievances, challenge incident reports, assert medical and mental-health needs, and seek application of First Step Act credits.

100. In December 2025 and January 2026, Mr. Cratty continued reporting misconduct, PREA concerns, and retaliation, including communications about the handling of his administrative remedies and legal mail.

101. On December 14, 2025, Mr. Cratty reported further details regarding the incidents involving Lt. Hackett and Dr. Haughawout and described a later mental-health episode in which he was again assaulted while disoriented.

102. On December 24, 2025, Dr. David Z. Simpson advised Mr. Cratty that three administrative remedies had been prepared addressing his conditions of confinement, failure to treat his medical and mental-health conditions, retaliation, and lack of appropriate reentry planning.

103. On January 12, 2026, Dr. Simpson informed Mr. Cratty that the remedies and supporting materials had been mailed to him as legal mail.

104. On January 13, 2026, Mr. Cratty reported that he had received the legal mail containing the remedies, but that certain post-it notes or instructions appeared to have been removed.

105. He further stated that he intended to turn in the BP-9s as soon as he saw the counselor.

106. On February 18, 2026, Rick Cratty forwarded a message from Shane stating that he had attempted to submit the remedies again and that the counselor told him they would simply reject them again.

107. In that same message, Mr. Cratty complained that staff do whatever they want with no regard for the rules that govern them, while still expecting him to follow rules that are then used against him.

108. On February 23, 2026, Rick Cratty wrote that his desperation was increasing, that counsel had filed a compassionate release motion, but that he had no idea whether Shane was even alive because there had been no communication for approximately a week. On February 25, 2026, Rick Cratty informed Dr. Simpson that Shane had received something from the Regional Office containing copied remedies and that a BP-9 had been

18

returned to him with a post-it note saying that staff had "already responded," even though, according to Shane, they had previously only rejected it.

109. Dr. Simpson then instructed that the packet, including the post-it note and any related paperwork, be preserved and mailed intact because the irregularities themselves were evidence of procedural obstruction.

110. By March 2026, Mr. Cratty's communications from his new facility reflected severe depression, persistent anxiety, suicidality, and extreme fear for his physical safety.

111. In a message forwarded by his parents on March 6, 2026, Mr. Cratty described being traumatized by repeated lockdowns, being unable to consistently mail documents, and seeing two incarcerated men stabbed, one nearly to death.

112. He stated that the environment was so dangerous that he believed he would either be seriously hurt, incur more time, or otherwise end up in catastrophic circumstances if he remained there.

113. He also described pressure to pay "protection money" to another incarcerated person and explained that he believed he could not safely leave the facility without paying what was being demanded of him.

114. Most disturbingly, he wrote that he had thought about getting "a bottle of white lightning and taking as many pills as I can get," that he was traumatized, that the counselors were doing nothing to help him, and that he was "ready to die."

115. Mr. Cratty further stated that he would already have killed himself if not for the fact that his parents wanted him to get out alive.

116. Rick Cratty described the family's situation as "desperation and trauma" and explained that they were nearing the limits of what they could handle financially while trying to keep Shane alive through outside assistance.

117. Jill and Rick Cratty have repeatedly communicated that the uncertainty, lack of communication, repeated lockdowns, and Shane's explicit suicidal statements have placed them under crushing emotional strain.

118. Taken together, the events at FCI Butner and the continuing events after Mr. Cratty's transfer reveal a consistent pattern of medical neglect, psychiatric neglect, punitive responses to mental-health crises, repeated use of retaliatory incident reports, obstruction of the administrative remedy process, interference with religious practice, degrading treatment, and transfer into increasingly dangerous conditions despite obvious psychiatric vulnerability.

119. Those events also show that Mr. Cratty's risk of serious self-harm is neither speculative nor new. He has repeatedly disclosed suicidal ideation, attempted self-harm, reported hallucinations, and described feeling trapped in conditions that he believes will either kill him or drive him to kill himself.

120. Mr. Cratty's family has likewise been placed on repeated notice of his deteriorating condition and has repeatedly communicated that they fear losing him if meaningful intervention does not occur.

121. The facts set forth above describe not isolated discomforts or ordinary incidents of prison life, but an escalating pattern of untreated psychiatric crisis, medical disregard, retaliatory punishment, and dangerous confinement conditions that continue to threaten Mr. Cratty's life, mental stability, and liberty interests.

20

The facts described above are supported by written communications from Mr. Cratty, correspondence with his parents, and administrative remedy filings submitted within the Bureau of Prisons. Representative materials reflecting these communications and filings are attached collectively as exhibits.

**Exhibit A – Administrative Remedy Filings (BP-9/BP-10 materials prepared and submitted)**

**Exhibit B – Email and Written Correspondence Between Shane Cratty, His Parents and/or Outside Advocate**

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [03/ 12 /2026], _____, 28 U.S.C. § 1746.

## LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions to preserve the status quo and prevent irreparable harm pending resolution of a case on the merits. **Fed. R. Civ. P. 65.**

The Supreme Court has established that a party seeking preliminary injunctive relief must demonstrate four factors:

(1) a likelihood of success on the merits;

(2) a likelihood of suffering irreparable harm in the absence of preliminary relief;

(3) that the balance of equities tips in the movant's favor; and

(4) that an injunction is in the public interest.

**Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).**

The Ninth Circuit has further explained that preliminary relief may also be appropriate where the movant raises "serious questions going to the merits" and demonstrates that the balance of hardships tips sharply in his favor, so long as irreparable harm and the public interest are also satisfied.

**Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011).**

Courts routinely recognize that the threat of serious physical injury, psychological collapse, or suicide constitutes irreparable harm warranting emergency judicial intervention. The Constitution imposes an affirmative duty on prison officials to protect prisoners from known risks of serious harm, including risks arising from serious mental illness or suicide.

Under the Eighth Amendment, prison officials may not act with deliberate indifference to a prisoner's serious medical needs.

**Estelle v. Gamble, 429 U.S. 97, 104 (1976).**

A prison official violates the Eighth Amendment when the official knows of and disregards an excessive risk to inmate health or safety.

**Farmer v. Brennan, 511 U.S. 825, 837 (1994).**

These principles apply with particular force where prison officials ignore or fail to adequately respond to a prisoner's risk of suicide or severe mental-health deterioration.

**Conn v. City of Reno, 591 F.3d 1081, 1095–96 (9th Cir. 2010), vacated on other grounds, 563 U.S. 915 (2011)** (recognizing that deliberate indifference to a known risk of suicide can constitute a constitutional violation).

Where prison officials are aware of substantial psychological distress or suicidal ideation yet fail to provide adequate treatment or protective intervention, courts have consistently recognized that such conduct may satisfy the deliberate indifference standard.

See **Clouthier v. County of Contra Costa, 591 F.3d 1232, 1244 (9th Cir. 2010)** (acknowledging that failure to respond to suicide risk may constitute deliberate indifference).

Because this case arises in the context of prison conditions, any injunctive relief must also comply with the Prison Litigation Reform Act ("PLRA"), which requires that prospective relief be narrowly drawn, extend no further than necessary to correct the violation of the federal right, and be the least intrusive means necessary to correct the violation.

**18 U.S.C. § 3626(a)(1)(A).**

The PLRA does not bar injunctive relief where constitutional violations are shown; rather, it ensures that the relief ordered by the Court is appropriately tailored to remedy those violations. Accordingly, where a prisoner demonstrates a substantial risk of serious harm arising from deliberate indifference to medical or psychiatric needs and where irreparable injury is likely in the absence of intervention, federal courts possess both the authority and the duty to grant narrowly tailored injunctive relief to prevent constitutional injury and preserve life while the merits of the claims are adjudicated.

## ARGUMENT

## I. THE COURT SHOULD ISSUE IMMEDIATE INJUNCTIVE RELIEF BECAUSE THE RECORD SHOWS THAT BOP'S WITHDRAWAL OF TREATMENT, FOLLOWED BY PUNITIVE RESPONSES TO OBVIOUS MENTAL DECOMPENSATION, HAS CREATED AN ONGOING AND INTOLERABLE RISK OF IRREPARABLE HARM

This case is not about an isolated disagreement over prison conditions. It is about a medically and psychiatrically vulnerable man whose condition began to unravel after the Bureau of Prisons stripped away treatment, ignored escalating symptoms, and then punished the very breakdown its own conduct helped produce. What happened to Shane Cratty was not random. It was foreseeable. It was preventable. And it is still happening.

The Eighth Amendment does not permit prison officials to respond to serious medical and mental-health needs with deliberate indifference. The Supreme Court has long held that deliberate indifference to a prisoner's serious medical needs violates the Constitution, and the Ninth Circuit has repeatedly applied that principle to situations involving psychiatric risk, suicide risk, and serious treatment failures. The governing preliminary-injunction standard likewise permits relief where the plaintiff shows likely success on the merits, likely irreparable harm, and that the balance of equities and public interest favor intervention; in the Ninth Circuit, serious questions going to the merits coupled with a sharp balance of hardships may also justify relief so long as irreparable harm and the public interest are shown. That standard is met here.

From the beginning, the Bureau was on notice that Shane was not an ordinary disciplinary problem. He was a mentally ill prisoner with a documented history of psychiatric instability, delusions, suicidality, and collapse when not properly treated. Even his mother's declaration, already before the Court, makes that unmistakably clear. Yet on arrival at Butner, his medication regimen was abruptly cut off. There was no careful transition. There was no documented effort to stabilize him first. There was no apparent recognition that withdrawing treatment from a mentally fragile person could trigger exactly the kind of spiral that followed. What came next was not recovery. It was deterioration.

And once that deterioration became visible, staff still did not correct course. They did not say: this man is unraveling, he needs medication, psychiatric attention, lower stimulation, and treatment. They instead chose the opposite path. They treated psychiatric dysregulation as insolence. They treated medical distress as manipulation. They treated fear, delusion, suicidal thinking, and help-seeking as misconduct. They wrote incident reports. They used force. They humiliated him. They isolated him. They transferred him upward into a more violent environment. They ignored the one obvious truth staring them in the face: Shane was getting sicker, not safer. That pattern is the heart of this motion.

## II. THE RECORD SUPPORTS A STRONG MERITS SHOWING THAT BOP ACTED WITH DELIBERATE INDIFFERENCE TO SHANE CRATTY'S SERIOUS MEDICAL AND MENTAL-HEALTH NEEDS

A prisoner asserting unconstitutional denial of medical care must show a serious medical need and deliberate indifference to that need. The Supreme Court articulated that rule in *Estelle v. Gamble*, and the Ninth Circuit continues to apply it, explaining that a prison official is deliberately indifferent when the official knows of and disregards an excessive risk to inmate health or safety.

There can be no serious dispute that Shane's psychiatric condition constitutes a serious medical need. His history includes major depressive disorder, anxiety, addiction, delusional thinking, hallucinations, suicidality, repeated hunger strikes, self-harm behavior, and explicit threats to take his own life. The record reflects not merely sadness or ordinary prison stress, but psychiatric decompensation so severe that he disclosed homicidal auditory hallucinations, reported repeated suicidal ideation, attempted self-harm, and told staff and family that he was ready to die. A heightened suicide risk is a serious medical need under governing law.

The facts also support deliberate indifference. Staff were repeatedly informed of vomiting blood, chest pain, suicidal thinking, hallucinations, fear of retaliation, hunger strikes, inability to eat properly because of dental issues, and the obvious mental disorganization that followed the withdrawal of medication and lack of treatment. Yet again and again, the response was either no care, grossly inadequate care, or punishment.

When Shane vomited blood, he was accused of misusing a duress button. When he reported psychiatric crisis, he was met with demeaning advice, isolation, force, and incident reports. When he disclosed hallucinations that he feared acting on, the disclosure was allegedly converted into a disciplinary threat rather than treated as a psychiatric emergency. When he said he was suicidal, staff members allegedly ignored him. When he needed protection from a staff member he accused of sexual abuse, he was instead threatened and left in fear. Even if a factfinder later concludes that not every individual actor behaved identically, the overall record supports the same conclusion: the institution saw unmistakable signs of psychiatric collapse and responded with neglect, hostility, or punishment instead of treatment.

That is classic deliberate indifference. Prison officials may not knowingly disregard a substantial risk to an inmate's health, including psychiatric harm and suicide risk.

## III. THE COURT SHOULD FIND A DIRECT AND FORESEEABLE CONNECTION BETWEEN THE DENIAL OF MEDICATION/TREATMENT AND THE DISCIPLINARY CASCADE THAT FOLLOWED

The Bureau is likely to argue that Shane's later behavior breaks the chain, that his incident reports prove he was dangerous or noncompliant, and that staff merely responded to misconduct as it occurred. But that framing ignores the chronology and the reality of serious mental illness.

The point is not that Shane was incapable of any functioning once medication was withdrawn. The point is that he began to deteriorate in a predictable and obvious way, and the institution responded to those deteriorating symptoms as if they were purely volitional misconduct. The law does not require a prisoner to be unconscious or catatonic before his psychiatric needs become constitutionally serious. A prisoner can still speak, still write, still try to explain himself, and still be spiraling.

That is exactly why this chronology matters. The record begins with medication being abruptly stopped and treatment not being meaningfully provided. Then come medical emergencies, dismissed or punished. Then come reports of delusions, dysregulation, self-destructive behavior, fear, suicidality, hunger strikes, and trauma. Then come incident reports, restraints, SHU placements, humiliations, and transfer to harsher confinement. What the Bureau calls a disciplinary history is, on this record, equally and more persuasively read as the paper trail of untreated mental illness.

That distinction matters. Because if Shane's behavior was substantially driven by obvious psychiatric destabilization, then the Bureau was not free simply to punish symptoms and preserve the resulting disciplinary record as though it were neutral proof of dangerousness. The Constitution does not allow prison officials to create or worsen a psychiatric crisis through treatment failures and then rely on the crisis they helped intensify as a basis for more punishment.

This Court should say so plainly: where the record shows that medication was withdrawn, treatment was not adequately restored, mental health plainly deteriorated, and staff responded

with force and incident reports rather than care, the disciplinary record cannot be treated as clear evidence of legitimate correctional necessity. It is part of the constitutional injury.

## IV. THE DISCIPLINARY SANCTIONS AND LOSS OF GOOD-CONDUCT TIME ARE ESPECIALLY TROUBLING BECAUSE THEY APPEAR TO FLOW FROM UNTREATED MENTAL ILLNESS AND THUS THREATEN A DISTINCT LIBERTY INTEREST

This case is not only about pain, fear, and psychiatric collapse. It is also about liberty. Shane alleges that he lost or risks losing good-conduct time based on incident reports issued during episodes of medical or psychiatric distress. The Supreme Court has made clear that when good-time credits are revoked, due process protections apply, and such disciplinary findings must at least rest on constitutionally adequate procedures and some evidence. That is important here for two reasons.

First, if the underlying conduct was substantially a manifestation of untreated psychiatric illness, then the Bureau's decision to proceed as though it were ordinary misconduct raises serious due process and fairness concerns. A disciplinary system cannot be used as a substitute for mental-health treatment.

Second, the injury is not abstract. Every incident report that removes good time or increases Shane's security score compounds the harm. It lengthens confinement, justifies harsher placement, and makes release and reentry more difficult. On this record, the loss of credits and resulting classification consequences are not separate from the medical claim. They are part of the same cascade: untreated illness leading to dysregulated behavior, dysregulated behavior leading to discipline, discipline leading to more time, harsher custody, and more trauma. That compounding harm strongly supports equitable intervention.

28

## V. THE RISK OF IRREPARABLE HARM IS NOT SPECULATIVE; IT IS PRESENT, REPEATED, AND ACCELERATING

Irreparable harm is the centerpiece of this motion, and the showing here is overwhelming. Shane has repeatedly threatened to kill himself. He has described himself as ready to die. He has reported suicidal ideation to staff, to family, and to outside advocates. He has described thoughts of obtaining pills and ending his life. He has engaged in repeated hunger strikes. He has attempted self-harm. He has reported hallucinations. He has explained that he is trapped in a violent prison environment that intensifies his fear and mental instability. He has watched men be stabbed. He has watched an inmate die after what he perceived as medical neglect. He has been threatened by staff, assaulted according to his account, and transferred into a higher-security setting that he experiences as life-threatening.

The law does not require this Court to wait until he succeeds in killing himself. A substantial, known psychiatric risk is enough, and officials may not decline to act in the face of that knowledge.

Nor can later money damages repair what is now at stake. If Shane commits suicide, this case becomes irreparable in the most literal sense. If he survives but suffers further psychiatric collapse, the damage may be long-lasting and profound. If more good time is taken from him based on conduct arising from untreated illness, no later order can truly restore the months or years lost to the same degree as timely intervention now. If he remains in an environment that he experiences as a daily trigger for panic, extortion, violence, and death, then every day of delay deepens the injury.

This is exactly why courts issue emergency injunctive relief.

## VI. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST STRONGLY FAVOR INTERVENTION

The Bureau will likely invoke deference, prison security, and administrative discretion. But deference is not a license for constitutional neglect. The public has no interest in allowing the federal government to push a mentally ill prisoner deeper into psychiatric collapse and then call the result management. The public has no interest in seeing a man punished for vomiting blood, for reporting hallucinations, or for seeking help during a mental-health crisis. And the public certainly has no interest in a preventable prison suicide.

By contrast, the relief requested here is measured and lifesaving. Shane is not asking this Court to run the prison. He is asking the Court to order the Bureau to stop doing what it has no lawful right to do and to start doing what the Constitution already requires: provide adequate psychiatric care, stop punishing symptoms of untreated illness as ordinary misconduct, and remove him from a setting that is driving his condition toward catastrophe. The burden on the Bureau is minimal compared to the burden on Shane. The Bureau may have to reevaluate medication, classification, mental-health care, and disciplinary handling. Shane, if relief is denied, may lose his life. That balance is not close.

## VII. THIS COURT SHOULD TREAT THE PRESENT MOTION AS A LAST NECESSARY INTERVENTION TO PREVENT A FORESEEABLE DEATH OR FURTHER COLLAPSE

The deepest truth in this record is also the simplest: people have been warned, over and over, that Shane is not okay;He warned staff;He warned psychology;He warned medical;He warned lieutenants;He warned his parents;His parents warned others;Administrative remedies were filed;Letters were sent;Counsel was appointed for other relief;Still, the underlying danger remains.This motion is therefore not premature. It is late. It comes after: medication was

withdrawn;After treatment failed;After blood was vomited;After hallucinations were reported;After suicide watch;After hunger strikes;After alleged sexual abuse and retaliation;After repeated incident reports;After transfer to harsher confinement;After repeated statements that he is ready to die.

At some point, a court must stop asking whether the warning signs are sufficient and start recognizing what they plainly mean. The Constitution does not require certainty of death before intervention. It requires action when officials know of a substantial risk and fail to respond reasonably. That this is the case.

The Court should find that Shane has shown at minimum serious questions going to the merits, a sharply tipped balance of hardships, a clear likelihood of irreparable harm, and a public interest in preventing unconstitutional treatment and a likely suicide. Under Ninth Circuit law, that is enough to justify immediate injunctive relief.

## VIII. BOP'S OBSTRUCTION OF THE ADMINISTRATIVE REMEDY PROCESS FURTHER JUSTIFIES IMMEDIATE COURT INTERVENTION

The circumstances presented here are particularly urgent because the administrative processes normally available to address prison conditions have been materially obstructed. Shane Cratty attempted to pursue administrative remedies regarding his medical care, staff misconduct, and conditions of confinement. The record reflects repeated interference with those efforts, including rejected filings, inconsistent responses, and the return of submitted materials without proper processing. In at least one instance, a BP-9 submission was returned with a handwritten note stating that a response had already been provided, even though the filing had previously been rejected rather than adjudicated on the merits.

These irregularities are not isolated procedural errors. They occur in the broader context

of prolonged lockdowns, repeated housing in restrictive conditions, and limited access to communication channels necessary to pursue administrative review. When an inmate is confined in restrictive housing or subject to recurring lockdown conditions, his ability to prepare filings, obtain documentation, communicate with outside advocates, and pursue remedies is significantly curtailed.

The record reflects that these conditions have materially interfered with Shane's ability to pursue the very administrative process the Bureau now expects him to exhaust. At the same time, the psychological deterioration underlying this motion has continued to accelerate.

Courts have recognized that administrative exhaustion requirements cannot be used as a shield where prison officials themselves render the grievance process effectively unavailable. When administrative remedies are obstructed, delayed, or made functionally inaccessible, the justification for requiring further administrative delay collapses.

Here, the consequences of delay are not abstract. Shane has repeatedly expressed suicidal ideation, severe psychiatric distress, and an inability to continue enduring the conditions he faces. Each additional delay in addressing his claims increases the likelihood that the underlying harm will culminate in irreversible injury.

The Court therefore confronts a situation in which the normal internal mechanisms designed to address prisoner grievances have been rendered ineffective at the very moment when timely intervention is most critical. Under these circumstances, equitable relief is not merely appropriate, it is necessary.

The purpose of a temporary restraining order and preliminary injunction is to prevent precisely this type of irreversible harm while the Court considers the merits of the underlying claims. Where a prisoner faces a credible and escalating risk of suicide or severe psychiatric

collapse, and where institutional processes have failed to provide meaningful protection, judicial intervention becomes the only remaining safeguard. For these reasons, the Court should exercise its authority under Rule 65 to issue immediate and narrowly tailored injunctive relief to stabilize Shane Cratty's condition, protect his safety, and preserve the Court's ability to adjudicate the merits of this case before the harm becomes irreversible.

**REQUESTED RELIEF**

For the reasons set forth above, Defendant Shane Cratty respectfully requests that the Court issue a Temporary Restraining Order and Preliminary Injunction, and enter an Order directing the Bureau of Prisons and all persons acting in concert with it as follows:

1. **Immediate Mental-Health Evaluation and Treatment Review.**

   The BOP shall, within a time period set by the Court, arrange for Mr. Cratty to be evaluated by a qualified psychiatrist or similarly qualified mental-health professional who is not alleged in this record to have participated in the conduct described above, for the purpose of assessing his current suicide risk, psychiatric instability, trauma symptoms, medication needs, and level of care required for safe housing and treatment.

2. **Medication Review and Continuity of Care.**

   The BOP shall immediately review Mr. Cratty's prior and current psychiatric and relevant medical medication history and shall not continue, initiate, discontinue, or materially alter psychotropic or other clinically necessary medication without documented clinical justification in the medical record and a contemporaneous assessment of the likely impact on his psychiatric stability.

3. **No Discipline for Manifestations of Untreated Psychiatric Crisis Pending Review.**

   Pending completion of the above psychiatric review and further order of the Court, the

BOP shall refrain from issuing or pursuing disciplinary sanctions based on conduct that is reasonably presented in this record as a manifestation of psychiatric decompensation, suicidal crisis, hallucinations, panic, trauma response, or help-seeking behavior, unless the BOP first documents a specific and immediate security necessity for doing so.

4. **Temporary Hold on Good-Conduct-Time Forfeiture Based on the Challenged Mental-Health-Related Incidents.**

The BOP shall temporarily stay implementation of any additional forfeiture of Good Conduct Time arising from the incidents challenged in this motion, and shall preserve the status quo as to any currently contested disciplinary findings, pending further order of the Court.

5. **Protection From Staff Retaliation and Contact With Named Staff.**

The BOP shall take immediate steps to prevent retaliatory contact, threats, intimidation, or unnecessary interaction between Mr. Cratty and any staff member identified in this record as having allegedly abused, threatened, humiliated, or retaliated against him, including but not limited to Lieutenant Hackett, pending investigation and further order of the Court.

6. **Suicide-Protective Conditions Consistent With Clinical Need.**

If the BOP determines that suicide precautions are clinically necessary, such precautions shall be administered in a manner consistent with constitutional standards and institutional policy, including access to basic hygiene, adequate nutrition, medically necessary diet, clinically appropriate monitoring, and the least restrictive conditions consistent with safety.

7. **Transfer or Reclassification Review for Placement in a Clinically Appropriate Setting.**

34

The BOP shall promptly conduct a good-faith reclassification and placement review to determine whether Mr. Cratty can be removed from his current high-security environment and placed in a lower-security or otherwise clinically appropriate setting that reduces the risk of psychiatric deterioration, suicide, retaliation, and trauma exposure.

8. **Protection of Religious and Medical Accommodations.**

The BOP shall not interfere with Mr. Cratty's approved religious diet, religious practice, medically approved diet, or medically authorized accommodations absent documented and legitimate institutional necessity.

9. **Medical Response to Acute Symptoms.**

The BOP shall ensure that reports by Mr. Cratty of vomiting blood, chest pain, suicidal ideation, hallucinations, self-harm thoughts, loss of consciousness, severe injury, or similar acute symptoms are treated as medical or psychiatric events requiring prompt assessment rather than automatic disciplinary referral.

10. **Preservation of Evidence.**

The BOP shall preserve all documents, emails, memoranda, disciplinary records, psychology records, medical records, PREA records, SENTRY entries, housing records, camera footage, restraint logs, suicide-watch logs, meal and diet records, and administrative-remedy records relating to Mr. Cratty from his time at FCI Butner through his present confinement.

11. **Production of Core Records to Counsel or to the Court.**

The BOP shall, within a period set by the Court, produce to counsel of record, or alternatively lodge with the Court, the core records necessary to adjudicate this motion, including the challenged incident reports, DHO/UDC records, current sentence

computation and security-classification records, relevant medical and psychology notes, hunger-strike documentation, suicide-watch documentation, and administrative-remedy tracking records.

12. **No Retaliation for Use of Remedies, PREA Reporting, Litigation, or Protected Complaints.**

The BOP shall not retaliate against Mr. Cratty for filing administrative remedies, making PREA complaints, seeking psychiatric care, communicating with counsel or advocates, or participating in this litigation.

13. **Further Narrowly Tailored Relief.**

The Court should grant such additional relief as is necessary to prevent irreparable harm, protect Mr. Cratty's life and psychiatric stability, and preserve the Court's ability to adjudicate the merits, provided that such relief remains narrowly drawn, extends no further than necessary to correct the federal-rights violations at issue, and is the least intrusive means of doing so.

Mr. Cratty does not ask this Court to manage the day-to-day operations of a federal prison. He asks for something far more limited and far more urgent: that the Court act before a mentally deteriorating prisoner, whose decline was met with punishment instead of treatment, is lost to suicide, permanent psychiatric collapse, or further unlawful deprivation of liberty. The requested relief is targeted to stabilize his condition, halt the most dangerous consequences of the challenged conduct, and preserve life while the Court considers the merits. Preliminary relief exists for precisely that purpose.

## CONCLUSION

For the reasons set forth above, the record before the Court demonstrates that Defendant Shane Cratty is presently facing a substantial and escalating risk of irreparable harm. The evidence reflects a pattern of serious psychiatric deterioration, repeated expressions of suicidal ideation, and ongoing conditions of confinement that have intensified rather than stabilized his mental health crisis.

The Constitution does not permit prison officials to remain deliberately indifferent to a known and substantial risk of serious harm to an incarcerated individual. Where the record demonstrates that a prisoner's medical and psychiatric needs are not being adequately addressed, and where the consequences of delay may include irreversible injury or loss of life, federal courts possess both the authority and the responsibility to intervene.

The relief requested in this motion is narrowly tailored to stabilize Mr. Cratty's condition, ensure that his psychiatric needs are appropriately evaluated and treated, and prevent further deterioration while the Court considers the underlying issues raised in this case. The requested relief does not ask the Court to manage the day-to-day operations of the Bureau of Prisons. Rather, it seeks limited and targeted intervention designed to prevent irreparable harm and preserve the Court's ability to adjudicate the merits of Defendant's claims.

Without such intervention, the risk that Mr. Cratty will continue to deteriorate psychologically, and potentially harm himself, remains substantial and immediate. The balance of equities therefore weighs heavily in favor of granting temporary relief, and the public interest is served by ensuring that constitutional protections are respected and that preventable harm is avoided.

Accordingly, Defendant Shane Cratty respectfully requests that the Court grant the

Temporary Restraining Order and Preliminary Injunction described above and enter the proposed

order submitted concurrently with this motion.

Dated: 3/12/26

Respectfully submitted,

Shane Cratty - Defendant, Pro Se - Reg. No. 43951-480
USP Canaan, 3057 Easton Turnpike, Waymart, PA 18472

**CERTIFICATE OF SERVICE**

I, Shane Cratty, certify that on this ___ day of ___, 2026, a true and correct copy of

the foregoing Defendant Shane Cratty's Motion for Temporary Restraining Order and

Preliminary Injunction Regarding Conditions of Confinement was served on all parties of record

in this matter, including counsel for the United States and counsel of record for Defendant, by

mailing or transmitting the document to the following:

Mary McNamara
Hannah Pollack
Swanson & McNamara LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Counsel for Defendant


United States Attorney's Office
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
Counsel for Plaintiff United States of America


I declare under penalty of perjury under the laws of the United States that the foregoing is true

and correct. Executed on: ___3/12/26___

___

Shane Cratty - Defendant, Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHANE CRATTY,<br><br>Defendant. | No.   CR 19-0681 CRB<br><br>ORDER GRANTING TEMPORARY RESTRAINING ORDER AND PERLIMINARY INJUNCTION |

The Court has reviewed Defendant Shane Cratty's Motion for Temporary Restraining Order and Preliminary Injunction regarding conditions of confinement, the supporting declarations and exhibits, and the record in this matter.

The Court finds that Defendant has presented evidence demonstrating a substantial risk of serious harm to his physical and mental health and that immediate intervention may be necessary to prevent irreparable injury while the Court considers the merits of the issues raised.

The Court further finds that the requested relief is narrowly drawn and directed toward preventing potential violations of Defendant's constitutional rights and protecting Defendant from irreparable harm pending further proceedings.

Accordingly, for good cause shown, and pursuant to Federal Rule of Civil Procedure 65 and the Court's equitable authority, the Court orders as follows:

## 1. Immediate Mental Health Evaluation

The Bureau of Prisons shall arrange for Defendant Shane Cratty to receive an immediate mental health evaluation conducted by a qualified mental health professional to assess his current psychological condition, suicide risk, and treatment needs.

## 2. Medication Review

The Bureau of Prisons shall review Defendant's prior and current psychiatric treatment history and medication needs and shall ensure that appropriate psychiatric care and medication management are provided consistent with clinical judgment and Defendant's medical needs.

### 3. Protection From Irreparable Harm

The Bureau of Prisons shall take all reasonable steps necessary to ensure Defendant's safety and to prevent self-harm or suicide while this matter is pending before the Court.

### 4. Preservation of Status Quo Regarding Disciplinary Sanctions

Pending further order of the Court, the Bureau of Prisons shall preserve the status quo with respect to disciplinary sanctions arising from the incidents described in Defendant's motion and shall refrain from implementing additional sanctions that would materially affect Defendant's good conduct time or classification status without further review.

### 5. Review of Housing and Classification

The Bureau of Prisons shall promptly conduct a review of Defendant's current housing placement and classification to determine whether a placement more consistent with Defendant's medical and mental health needs is appropriate.

### 6. Preservation of Records

The Bureau of Prisons shall preserve all documents, records, video recordings, disciplinary records, medical records, psychological records, and administrative remedy documentation relating to Defendant Shane Cratty from January 1, 2022 through the present.

### 7. Compliance With the Prison Litigation Reform Act

This Order is narrowly drawn, extends no further than necessary to correct potential violations of federal rights, and constitutes the least intrusive means necessary to address the risk of irreparable harm, consistent with 18 U.S.C. § 3626.

### 8. Further Proceedings

The Court will set further proceedings as necessary to determine whether the temporary relief granted herein should remain in effect as a preliminary injunction.

IT IS SO ORDERED.

DATED: _____

HON. CHARLES R. BREYER
United States District Judge

# Exhibit A


## Administrative Remedy Filings


**(BP-9/BP-10 materials prepared and submitted)**

The Remedy Project
Tasleemah Lawal, Esq.
Attorney at Law
PO Box 50203
Brooklyn, NY 11205
intake@theremedyproj.org
(929) 224-0380


the REMEDY PROJECT
Students advocating for the humanity of incarcerated people

## BP-8/9 Submittal — Shane Cratty (#SC439-01)
### Submitted through the Unit Counselor or Unit Manager

I, Shane Cratty, hereby submit this BP-9 with an attached BP-8, for the Warden to address. I affirm that this submission is in compliance with the policy specified in Program Statement 1330.18.

As such:

- **This Request for Administrative Remedy BP-9 should not be rejected under the false pretense that it has been submitted with too many continuation pages attached.**
    - This BP-9 is being submitted with no continuation pages, in accordance with PS 1330.18 §542.14(c)(3).
    - The Warden and/or staff reviewing the issue may consult the BP-8 informal resolution attached hereto, and its continuation pages, to reference the issue in its entirety. The number of continuation pages included alongside this BP-8 informal resolution is unregulated, as per PS 1330.18 §542.13(a).

- **This Request for Administrative Remedy BP-9 should not be rejected under the false pretense that BP-8 informal resolution was not attempted prior to submission of administrative remedy, or that evidence of the attempt at informal resolution was not provided.**
    - PS 1330.18 §542.13(b) dictates that "An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution." As the issue addressed within is not capable of being resolved at the unit team level, it is thus a necessity to immediately elevate this issue to the formal Request for Administrative Remedy level (BP-9).

- **This Request for Administrative Remedy BP-9 should not be rejected on the basis that the attached BP-8 informal resolution was not provided on a specific institutional form.**
    - PS 1330.18 §542.13(a) states that "[e]ach warden shall establish procedures to allow for the informal resolution of inmate complaints" and that "[t]hese procedures may not operate to limit inmate access to formal filing of a Request."
    - PS 1330.18 §542.16(a) provides that "[a]n inmate may…obtain assistance from outside sources, such as family members or attorneys[.]"
    - Since there is no public access to specific institutional BP-8 informal resolution forms, and staff refuse to provide the forms to incarcerated individuals for the purpose of assistance via outside sources, a rejection on this basis would severely limit access to formal filing of a Request and would therefore be a direct, unfair hindrance to my due process rights.

UNICOR FEDERAL PRISON INDUSTRIES, INC
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Cratty, Shane     43951-480          USP Cannan
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A- INMATE REQUEST**

I am Submitting this BP-9 Without a response to the BP-8 Attached hereto because this request Cannot be resolved at the unit team Level.

This is a Civil rights Class-of-One Complaint against the Federal Bureau of Prisons ("BOP"), including the institution involved in this matter, their Wardens, Supervising officials, Line Staff, Medical Staff, Psychology Staff, and the responsible Regional Office.

_____          _____
DATE                              SIGNATURE OF REQUESTER

**Part B- RESPONSE**

_____          _____
DATE                              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: _____

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____     _____     _____     _____
            LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT       INSTITUTION

# ATTEMPT AT INFORMAL RESOLUTION
(Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

Inmate's Name___**Shane Cratty**___ Reg #__43951-480__ Date__1/06/25__

Date and time given to inmate._____ ____ ___ _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Inmate:

1. Nature of Problem: This is a civil rights Class-of-One complaint against the Federal Bureau of Prisons ("BOP"), including the institutions involved in this matter, their wardens, supervisory officials, line staff, medical staff, psychology staff, and the responsible Regional Office. This complaint arises from the creation and maintenance of unconstitutional conditions of confinement that subjected Shane Cratty to cruel and unusual punishment in violation of the Eighth Amendment.
( SEE CONTINUATION PAGES )

2. State what action or resolution you expect.
( SEE CONTINUATION PAGES )
_____
_____
_____
_____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Counselor to check applicable section:

( ) Problem informally resolved on_____

( ) Problem not resolved. Continue formal procedure.
Explanation for Non-Resolution:
_____
_____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Date: _____ Counselor's Signature: _____

Date: _____ Unit Manager's Signature: _____

Date: _____ Inmate's Signature:

SC439-01



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

This is a civil rights Class-of-One complaint against the Federal Bureau of Prisons ("BOP"), including the institutions involved in this matter, their wardens, supervisory officials, line staff, medical staff, psychology staff, and the responsible Regional Office. This complaint arises from the creation and maintenance of unconstitutional conditions of confinement that subjected the shane Cratty to cruel and unusual punishment in violation of the Eighth Amendment.

Facts:

A) From the very outset of Mr. Cratty's placement at FCI Butner, staff conduct made clear that he would be subjected to disregard, hostility, and discriminatory treatment. The misconduct did not arise from isolated incidents, but began immediately and escalated over time. Upon his arrival at FCI Butner, Shane was seen by Dr. Kraft, who immediately discontinued all of his prescribed pain and inflammation medications, including gabapentin (1200 mg three times daily), lidocaine patches, Tylenol, and meloxicam, without reviewing his medical records. Dr. Kraft told Shane, "You're only 30, you don't need any of this shit," and further stated that inmates "just sell" medication on the yard. This blanket refusal reflected both deliberate medical indifference and discriminatory stereotyping.

B) One of the first notable incidents that began to expose a clear and drastic pattern of retaliation against Shane Cratty occurred in late February or early March of 2025. The warden began holding inmate property (ie. magazines, books, newspapers) with the excuse that there was a drug trafficking/security risk. Mr. Cratty sent letters addressing the unjustified seizures and holding of personal property/correspondence. Two days later, two case managers named Wright and McCoy entered his cell early in the morning and went through his (and only his) locker, discarding all of his personal correspondence from family and friends, legal paperwork, personal books, his NRDAP group journal and personal photos from the last 3 years. He had previously printed out the messages he had sent to the warden; during this clearly retaliatory search and seizure, they took these copies as well.

C) Later that March, Shane had a vomiting episode, throwing up blood and suffering severe dehydration. When sent to medical, Dr. Kraft ordered he be sent back to his unit without adequate treatment, but was prevented from doing so by the nurses and PA on duty and sent to the hospital. On May 29th, Shane had another vomiting episode. This time, upon going to

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 - O1

medical, the nurses dismissed his serious symptoms as drug withdrawal and sent him back to the unit rather than treating him. The episode continued and at around 5 or 6pm he began throwing up dark blood and hit the duress button. Officer K. Davis arrived, called him "whiteboy crazy," and told him to stop hitting the button. He responded by informing the officer that he was in fact having a medical emergency and pressing the button once again in hopes of being sent to medical. She then issued a 200-series incident report for "misusing a security device," even though Mr. Cratty was utilizing the duress button for its intended purpose. As a result, he was sent to the SHU where he was kept for 4 days without receiving medical help. Luckily, the vomiting episode stopped on its own, but further medical screening and treatments for these recurring episodes should be performed. Hematemesis (vomiting blood) is a medical emergency and should never be left untreated. It indicates potential upper gastrointestinal bleeding, which can rapidly worsen, lead to significant blood loss, anemia, shock, and, if unaddressed, long-term organ damage or death. Prompt diagnostic evaluation is necessary to identify the source of bleeding and prevent serious complications.[1]

**D)** On June 2nd, Shane Cratty informed SHU staff that he was experiencing a mental health crisis, likely exacerbated by solitary confinement and lack of medical care. Psychology intern Dr. Adams provided ultimately unhelpful and damaging advice, affirming his delusions and telling him to simply accept them.

E) On June 3rd, Mr. Cratty was released back to the unit still experiencing a mental health crisis and delusions that drove him to walk head first into a metal gate and enter the lieutenant's office; he was consequently dog piled by three large staff members and dragged to the SHU. An incarcerated individual, Coty Brewer, who was working in the lieutenant's office at the time, bore witness to this assault. Before Mr. Cratty was dragged out of the office, the lieutenants told him "(he) didn't see anything" and dismissed him from the site. Shane was then violently dragged down to the SHU and put in an unauthorized restraint position (both hands handcuffs above his head with only one set of handcuffs, 3 point restraint rather than 4 point, with no sheet or blanket). The restraint was immensely painful and unsafe, pulling his shoulders out of their sockets. They cut all of his clothes off with the exception of his boxers. He was left in this position for several hours. They issued him an incident report for "assault w/o serious injury (attempt)" and threatening bodily harm, which he was ultimately found guilty of. He is still in the process of trying to appeal. After this incident he was placed in the SHU again, and after 2 - 3 days his mental health deteriorated further, to which he consistently informed SHU staff. Mr. Cratty was on common fare (kosher) at this time, yet during his time in the SHU, staff started taking the cereal out of its package and placing it into unsealed plastic bags, therefore rendering

---

[1] https://my.clevelandclinic.org/health/symptoms/17708-vomiting-blood

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439-01



it non-kosher and violating his right to practice his religion. During a walk through, the warden called him "a little bitch and a pussy."

F) On June 9th, after several days of notifying SHU staff that he was experiencing a mental health crisis without meaningful intervention, Mr. Cratty informed the officer on duty (Officer Yow) that if psychology was not contacted, he would cover his cell window to force staff to respond. He covered the window with paper. Lieutenant B. Hackett arrived at his cell and threatened to enter the cell if Shane did not uncover the window. He uncovered it and again explained that he was experiencing a mental health crisis and needed to speak with psychology. Lt. Hackett ordered him to cuff up and Shane complied. Once restrained, Lt. Hackett forcefully grabbed Shane's elbow and verbally berated him, stating, "Who the fuck do you think you are making demands of me." Mr. Cratty reiterated that he was asking for staff to follow policy and contact mental health. Lt. Hackett escorted Shane to a large dry cell used for dressing inmates in and out. While still handcuffed, Lt. Hackett ran him into the back corner of the cell, yelling that "this is my SHU" and that he could do whatever he wanted." Lt. Hackett left briefly and returned with Officers Yow and Clark, who stood outside the cell. Lt. Hackett ordered Mr. Cratty to strip completely naked, then Hackett proceeded to place his hands on the window sill. Shane was forced to stand fully nude for approximately one minute while Lt. Hackett stared at him, verbally humiliating him by saying he was "not a man" and "a little bitch." Lt. Hackett then grabbed Shane's left buttock. Lt. Hackett gave Mr. Cratty a paper smock, applied shackles with a belly chain and black box, and continued verbal abuse. When Shane stated his intent to file a PREA complaint, Lt. Hackett told him, "Good luck getting anyone to take it, this is my house." Shane was placed in an observation cell for approximately eight hours. During the required medical assessment following the use of restraints, Mr. Cratty informed medical staff that he had been sexually abused and requested to file a PREA complaint. Lt. Hackett subsequently issued a 200-series incident report for "misusing a security device" (covering the cell window), falsely claiming Shane repeatedly refused to uncover the window and that additional force was required. This is odd, as it is not uncommon for those incarcerated in the SHU to cover their windows. This along with the fabricated details of the incident report paint a clear picture of class of one discrimination and a pattern of retaliation from staff.

G) Over the next 48 hours, Mr. Cratty reported the sexual assault to approximately 17 staff members before finally being seen by psychology. Dr. J. Haughawout took the PREA report. The following day, Lt. Hackett returned to the SHU range, stared into Shane's cell, and stated, "I'm gonna get you for filing that PREA, bitch." Fearing further retaliation and physical harm, Shane

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 - 01



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

reported suicidal ideation to remove himself from proximity to Lt. Hackett and was placed on suicide watch.

**H)** Throughout his time under suicide watch (June 12th - July 10th) he was subjected to multiple uses of excessive force/assault by officers and psychological abused by psychology staff. Additionally, he was denied food on several occasions, denied any reading material from psychology (took me 3 weeks to get a bible), denied any clothing except a pair of boxers, denied a proper shower for 21 days, and denied toilet paper multiple times. The room was kept at a temperature of approximately 50-55 degrees Fahrenheit at all times.

**I)** During this time, Mr. Cratty witnessed another incarcerated individual die as a result of staff and medical negligence. The individual, Darnell Fulton, repeatedly informed staff that he was experiencing chest pain for several hours after being placed in the adjacent suicide watch cell at approximately 3:00 p.m. on June 15. At approximately 2:45 a.m. on June 16, Mr. Fulton reported difficulty breathing and ongoing chest pain. Lieutenant Harrison did not respond for approximately 15 minutes. While speaking with Lieutenant Harrison, Mr. Fulton lost consciousness. Lieutenant Harrison then left the area without calling medical staff. He later returned with a compound officer, Officer Noble. Rather than initiating emergency medical procedures or contacting medical personnel, the two officers moved Mr. Fulton's arms and legs and poured two cups of water on his face. Mr. Fulton remained unresponsive. The officers left again without calling medical. At approximately 3:10 a.m., Officer Noble returned. Shane informed him that Mr. Fulton appeared to be dead. Officer Noble laughed and stated, "Well, if he's dead, it's too late to do anything about it now." After Mr. Cratty insisted the situation was not a joke, Officer Noble checked Mr. Fulton's pulse and found none. Officer Noble then began improper chest compressions and called Lieutenant Harrison, who returned and took over. By Shane's observation, Mr. Fulton had already been without a pulse for approximately 15 minutes by that time. Medical staff did not arrive until approximately 3:30 a.m., and Mr. Fulton was pronounced dead at 3:50 a.m. Witnessing this incident caused Mr. Cratty significant anxiety and reinforced his concern that serious medical emergencies within the unit were not being treated with appropriate urgency, including the possibility that his own medical needs might similarly be disregarded.

**J)** On June 19th, Mr. Cratty initiated a hunger strike, telling staff he required a soft diet due to his dental issues and the fact that he has had 15 tooth extractions since being in custody, which severely inhibits his ability to chew anything even moderately hard. Staff continuously relied on

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - O1



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

another incarcerated person to monitor Shane's health and eating during this hunger strike, despite protocol prohibiting this. After 6 days, Dr. Rogers, who was covering for his primary physician, Dr. Kraft, at the time, consulted the dietician and approved of a level 6 soft and bite sized diet. When they weighed him that day, he weighed only 123 pounds; therefore, in addition to receiving a soft diet, Shane asked to be placed on Ensure until his weight was back at a proper level. Despite verbally committing to complying with his valid requests, Shane was not placed on a soft diet for quite some time after this promise and never received an Ensure to bring up his weight from the extreme loss.

K) On June 29th, while Mr. Cratty was mostly unclothed and using the restroom, psychologist Dr. J Haughawout came into his cell and stared inappropriately at him. This made Shane feel violated and uncomfortable, especially in the context of the past assaults and threats at the hands of BOP staff. Alarmed, he asked Dr. Haughawout why she was staring and requested Officer MIller bring in a different member of the psychology staff, explaining his plan to file a PREA complaint. In yet another brazen example of staff participating in a pattern of retaliation, deprivation and abuse, Mr. Cratty was not given dinner that night. Soon after what was supposed to be dinnertime, he requested a plunger and a drain snake to unclog the toilet. Upon doing so, he notified staff that he had not been given a dinner tray that night, and withheld the items until he was able to talk to lieutenants and acquire food. When Lt Harrison and Lt Smith arrived, he explained the situation to them. The Lieutenant then proceeded to open the door, step on Shane's foot, violently slam him into the glass window, and handcuff him with excessive force. He was still denied his dinner. Hours later around 12:30am, when Officer Hargrove did his round, Shane inquired about the lieutenant's whereabouts and told him he had yet to receive his dinner; Officer Hargrove refused to call the lieutenant. Mr. Cratty then requested toilet paper, but upon reaching his left arm out of the tray slot, the officer slammed his elbow in the slot 4 or 5 times before he could pull back, resulting in extreme bruising. Eventually, the lieutenant visited his cell and claimed he would contact food service to "see what he could do." At this point Shane began having severe chest pains for the next six to seven hours, ending in him completely losing consciousness. Medical supposedly arrived at around 8 to 9pm; Rather than providing timely emergency care, staff simply stood outside of his cell and banged on his door for approximately 3o minutes before finally escorting him to a medical exam room in a wheelchair. This is when Shane regained consciousness. While there, nursing staff (Nurse Walker, Nurse Bell, and Nurse Malone) ran an EKG without a doctor present. The first one came out inconclusive, and the second one seemed to be barely conclusive, as Shane recalls Nurse Walker tentatively postulating that although "it was hard to see," "the sine wave might be okay." When Mr. Cratty

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - 01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

L) informed medical staff of his bruised and painful elbow from when he was assaulted by Officer Hargrove earlier that night, they denied him a proper medical assessment of his injury. Rather than getting a second opinion on the practically inconclusive EKG screening or providing even a bare minimum examination of his left arm, the staff simply dismissed Mr. Cratty back to suicide watch. This is clearly not a comprehensive medical exam and demonstrates clear, cruel, and dangerous deliberate indifference to Mr. Cratty's medical concerns.

M) In response to the above inhumane conditions of confinement on suicide watch (including but not limited to the aforementioned assaults by officers, psychological abuse from psychology staff, medical neglect, denial of basic goods like food, soap, clothing, toilet paper, and religious reading materials), Mr. Cratty began a hunger strike on June 27th.

N) On June 29th, a psychology intern named Dr. Eldridge interviewed Shane and, providing no clear logical explanation, officially "unauthorized" his blanket. When Officer Blake entered to collect this blanket, Shane requested the presence of a lieutenant. (It is important to note that Officer Blake has played a sizable role in his inhumane confinement in suicide watch, consistently denying Shane of necessities like toilet paper.) When Lt. Criss arrived, he entered his cell accompanied by Officer Blake and Officer Bilohlavek, Shane's blanket was located under his mattress, which he was sitting on. Staff proceeded to lift Shane off of the mattress and slam his head and knees against multiple walls at least five times. Shane landed in the shower and attempted to regain his footing; this proved challenging considering the floor was still damp from a previous shower (If you could call it a shower, considering BOP Staff had been consistently depriving Shane of soap). Trying to stabilize, he reached forward and accidentally grabbed the rubber band on Officer Blake's wrist which consequently snapped. Mr. Cratty was then forcibly removed from suicide watch and placed in soft restraints in the SHU for about 4 to 5 hours. During this time, he suffered debilitating fear and anxiety, as he was unsure if Lt Hackett, the staff member who had assaulted and threatened Shane after the aforementioned PREA report, was assigned to the SHU that night. It wasn't until 72 hours later that Shane received an incident report for "assault without serious injury (attempt)" and threatening bodily harm, which violates the BOP procedural policies for the disciplinary program.

O) While under Suicide Watch, Dr. Haughawout continued to conduct daily (weekday) sessions with Mr. Cratty, despite his clear communication that she was making him feel uncomfortable considering the previous incident and his intent to file a PREA report. She had been playing a pivotal role in depriving Shane of a blanket and a bible, which he had been requesting since his

This continuation page is for the attempt at informal resolution **only**. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 - 01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

placement under Suicide Watch. According to protocol, on suicide watch incarcerated folks in this unit should be given items to ensure the least restrictive setting that doesn't interfere with their safety; this was continuously violated. She continuously made attempts to remove Shane from Suicide Watch, even though he made it abundantly clear that he feared his life due to the threat of dangerous and violent retaliation at the hands of Lt. Hackett. On July 1st, after the assault by Lt. Criss, Officer Blake, and Officer Bilohlavek, Dr. Haughawout pleaded with him to end his hunger strike if she reauthorized the blanket, forcing him to eat 2 whole trays at lunch. After this strike, from July 1st to July 10th, Mr. Cratty was routinely given the wrong items for his dietitian approved diet, and meal trays would often be missing food items.

P) On July 9, Shane reported to Dr. Haughawout that he was experiencing auditory hallucinations instructing him to kill her and other staff members, including the warden, lieutenants, the captain, and the food service administrator. Mr. Cratty explicitly stated that he disclosed this information out of concern for staff safety and his own, and to prevent himself from acting on thoughts he recognized as dangerous and connected to ongoing abuse he was experiencing. Rather than treating the disclosure as a psychiatric emergency or mental health crisis, Dr. Haughawout documented the incident as a disciplinary matter, issuing a write-up for making threats and omitting the context that Shane reported hearing voices. The incident was reframed solely as a threat against staff. However, documentation in the institutional logbook by both the incarcerated observer and Lieutenant Criss confirms that Shane reported experiencing auditory hallucinations directing him to commit these acts. This reflects a failure to appropriately respond to a serious mental health disclosure and a mischaracterization of protected help-seeking behavior as misconduct. Later that day, Lt. Smith informed him that Dr. Haughawout had written this incident report; It is important to note that he was never presented with a physical copy.

Q) On July 10th, the DHO requested Shane Cratty's participation in 4 different hearings: incident reports from May 29th (accused of "misusing a security device" when he pressed the duress button during his vomiting episode), June 3rd (accused of "assault w/o serious injury (attempt)" and "threatening bodily harm" during his mental health episode, when he was dogpiled in the lieutenant's office , dragged to the SHU, and placed in an unauthorized restraint), June 9th ("misusing a security device" by covering the SHU window then enduring a violent and degrading assault at the hands of Lt. Hackett), and June 29th ("Threatening bodily harm," which was Dr. Haughwout's gross mischaracterization of Shane's help-seeking mental health disclosure). Shane Cratty communicated with the hearing officer that he wasn't in a mental state where he could properly defend himself or understand the proceedings. Despite this, the officer

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 - 01

Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

Hackett or one of the officers pushed him from behind, causing him to slam his head into the wall. Mr. Cratty then fell back asleep without receiving any medical or mental health evaluation.

**U)** After attempting to file multiple administrative remedies from the beginning of August through September and receiving no responses at all, including a rejection notice from the Mid-Atlantic Regional Office when he attempted to file PREA complaints on a BP-10, Shane reached a point where he felt that initiating a hunger strike was the only remaining way to get staff to acknowledge or address what was happening to him. He stopped eating after breakfast on September 25. The following day, September 26, after informing the unit officer that he was feeling suicidal, Mr. Cratty was taken to psychology, where two psychologists, Dr. Shemin and Dr. Halbsgut, and the psychiatrist, Dr. Tryhubenko, were present. Shane informed them that he had not eaten since breakfast the previous day, asked that his hunger strike be documented, and stated clearly that he was feeling suicidal. Dr. Halbsgut became confrontational, telling Shane that she did not have to document anything and that she alone decided how anything would be documented. Mr. Cratty attempted to explain that there were program statements and policies governing hunger strikes and suicide risk that required documentation, but Dr. Halbsgut refused to listen. After several minutes, Shane told her that she was not doing her job and did not know how to properly document what was occurring. Dr. Halbsgut then contacted compound staff, and Shane was taken to the lieutenant's office and placed in a dry cell. Lieutenant Allen spoke with him, and Shane again explained that he was on a hunger strike, that he was feeling suicidal, and that Dr. Halbsgut had refused to document or address either issue while the other psychology staff followed her lead. Lt. Allen told Mr. Cratty she would ensure medical information was informed that he was not eating, after which Shane was returned to his unit. Dr. Halbsgut subsequently issued an incident report charging Shane with insolence to a staff member, though the report was once again not delivered to him for more than 72 hours.

**V)** After later appearing before the UDC on the insolence charge written by Dr. Halbsgut, Shane submitted a BP-9 appeal arguing that the incident report was invalid because it had been delivered more than 72 hours after the alleged incident. Several weeks later, the unit manager, Mr. Griffin, returned the BP-9 with a rejection notice stating that Mr. Cratty had failed to attach a copy of the incident report, despite there being no requirement in the Administrative Remedy Program policy that a copy of the incident report be attached for a UDC appeal.

Shane' hunger strike, which began on September 25th, lasted a total of eleven days. During that time, he informed multiple lieutenants, including Lt. Reynolds, that he was not eating. He was

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 — 01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

seen by medical only once, on September 30. Because staff were not documenting the hunger strike or conducting medical assessments every 24 hours as required by policy, Mr. Cratty concluded that continuing the strike was accomplishing nothing and ate again on the night of October 6.

**W)** On October 7, Shane took his breakfast outside to the Sukkah tents that had been set up for the Jewish holiday of Sukkot, where incarcerated individuals are permitted during the holiday period to eat, study Torah, and pray. An officer from laundry, Officer Hendricks, questioned Shane about what he was doing and told him he was not allowed there. Mr. Cratty respectfully told him that he was permitted to be there and asked that he not be harassed or persecuted for practicing his religion. Officer Hendricks then attempted to order Shane to go to laundry so his medical soft shoes could be confiscated; this is certainly an unauthorized punishment. He refused and called over the lieutenant and compound officers who were already present in the compound. Lieutenant Mion responded and escorted Shane to the lieutenant's office dry cell. While there, an officer named Diaz stated that Shane was probably "trying to check in" and called him a child molester. After approximately thirty minutes and a shift change, Lt. Reynolds arrived and instructed Shane to return to his unit.

**X)** Throughout this period, Mr. Cratty repeatedly asked his unit case manager, J. Wright, for receipts confirming submission of his administrative remedies, as well as information regarding when those remedies had been received and when responses were due. Wright told Shane that he could not provide any of that information and claimed that he did not have the access necessary to print or retrieve those documents. On November 6, Shane attended a scheduled team meeting, during which Wright provided him with his team sheet and a sentence computation sheet. The computation sheet dated November 6 listed Shane's security level as medium. During that meeting, Shane asked Wright when he should submit a cop-out to the warden requesting application of his First Step Act credits. Wright told him that he could submit it at any point during the following week and did not mention any pending transfer or change in custody status. The following day, November 7, Shane was unexpectedly instructed by a unit officer, whose name he does not recall, to pack his property and report to Receiving and Discharge because he was being transferred. On the morning of November 12, immediately after the unit doors opened, Officer Wilson again instructed Shane to report to R&D. Shane was placed on a bus and transported to Atlanta.Upon arrival, an intake counselor informed Shane that he was being designated to a USP and that his security level had been changed to high. Shane was not provided with an explanation for the increase in his security score and remains unsure what

This continuation page is for the attempt at informal resolution **only**. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 −0 1

factor caused the additional point to be assessed. To Shane's knowledge, even after all issued incident reports, his total score was 23 points. Had staff responded to his administrative appeals as required, and had any of the challenged incident reports been expunged or reduced, his score would have been lowered to 22 or 21 points, which would not have supported a high-security designation.

**Y)** Taken together, the timing and circumstances of Shane Cratty's transfer raise serious concerns of retaliation and denial of due process. Shane was transferred without prior notice, without explanation, and immediately after sustained efforts to file administrative remedies, challenge incident reports, assert his medical and mental health needs, and request application of his First Step Act credits. At no point was he informed of a change in his security score, given an opportunity to contest it, or provided documentation supporting the alleged increase.

**Z)** The foregoing facts demonstrate a consistent and escalating pattern of misconduct by staff at FCI Butner, beginning immediately upon Shane's arrival and continuing through his transfer. Across medical care, mental health treatment, food accommodations, suicide prevention, use of force, religious practice, and access to the administrative remedy process, Shane was repeatedly met with deliberate indifference, retaliation, and disregard for established Bureau of Prisons policies and constitutional protections. Rather than addressing documented medical emergencies, mental health crises, and formal grievances, staff responses routinely involved neglect, punishment, intimidation, or procedural obstruction. Viewed as a whole, the record reflects not isolated failures, but a sustained course of conduct that subjected Shane Cratty to cruel, degrading, and dehumanizing conditions of confinement.

**Grounds for Relief:**

1. The 8th Amendment of the U.S. Constitution prohibits "cruel and unusual punishment."
   a. According to the 1976 Supreme Court case *Estelle v. Gamble*, 429 U.S. 97 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'" which is in direct violation of the 8th amendment.
   b. The Supreme Court in *Farmer v. Brennan*, 511 U.S. (825) (1994) held that a "prison official may be held liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate health or safety only if he knows that inmates

This continuation page is for the attempt at informal resolution **only**. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 −01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

face a substantial risk of serious harm and disregards that risk by failing to take reasonable measure to abate it."

c. Supreme Court case *Brown v. Plata*, 563 U.S. 493 (2011) held that when prison conditions deny inmates basic sustenance, including medical and mental health care, and when those conditions are longstanding, systemic, and well-documented, they constitute cruel and unusual punishment under the Eighth Amendment.

d. *Whitley v. Albers*, 475 U.S. 312 (1986) holds that excessive force from prison staff violates the set standards for the 8th amendment if applied "maliciously and sadistically for the very purpose of causing harm."

e. In *Hope v. Pelzer, 536 US 730 (2002)*, the Supreme Court held that the "obvious cruelty" of using punitive restraints without a legitimate penological purpose violates the Eighth Amendment, emphasizing that officials are on notice that conduct involving "unnecessary pain" and "humiliation" constitutes the unnecessary and wanton infliction of pain.

2. The Equal Protection Clause included in the 14th Amendment of the U.S. Constitution prohibits states from denying "any person within its jurisdiction the equal protection of the laws."

a. According to *Village of Willowbrook v Olech* (2000), the "class of one" doctrine under the Equal Protection Clause allows individuals to seek legal action against their targeted unfair treatment as compared to others in similar situations.

3. The Due Process Clause of the 14th Amendment rules that "No State shall … deprive any person of life, liberty, or property, without due process of law."

a. *Procunier v. Martinez*, 416 U.S. 396 (1974) holds that "Prisoners do not forfeit all constitutional protections by reason of their conviction and confinement. Administrative actions which arbitrarily interfere with fundamental constitutional rights must conform to due process requirements."

b. *Wolff v. McDonnell*, 418 U.S. 539 (1974) holds that "disciplinary proceedings must include written notice to the defendant of the charges, a written statement of evidence, and the opportunity for an inmate to call witnesses and present evidence."

4. The First Amendment to the United States Constitution protects the rights to free speech, to petition the government for redress of grievances, and to practice religion, and these protections extend to incarcerated individuals subject only to reasonable limitations

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 -01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

justified by legitimate penological interests under *Turner v. Safley*, 482 U.S. 78, 84 (1987).

    a. *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) recognized that prison officials may not retaliate against an incarcerated person for engaging in protected First Amendment activity. To state a retaliation claim, a plaintiff must show engagement in protected conduct, adverse action, and causal connection.

    b. *Cutter v. Wilkinson*, 544 U.S. 709 (2005) holds that "Prison officials are not allowed to impose a substantial burden on the free exercise of religion by prisoners."

5. Under the Prison Rape Elimination Act, PS 5324.12 states, "The Bureau also has zero tolerance for sexual abuse of a staff member by an inmate, detainee, or resident…The Bureau also has zero tolerance for sexual harassment of staff by inmates.

    a. § 115.62 Agency protection duties

        i. "When an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate."

    b. § 115.71 Criminal and administrative agency investigations

        i. "(a) When the agency conducts its own investigations into allegations of sexual abuse and sexual harassment, it shall do so promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports."

        ii. (e) The credibility of an alleged victim, suspect, or witness shall be assessed on an individual basis and shall not be determined by the person's status as inmate or staff."

6. PS 5270.09 Section 541.1, Part 3 "Principles," "Disciplinary action may not be capricious or retaliatory."

7. Federal employees, including BOP staff, are governed by the Standards of Ethical Conduct (5 C.F.R. Part 2635):

    a. § 2635.101(b)(10): Employees shall not **engage in actions that are illegal or unethical**, even if directed by a superior.

8. PS 5566.06, Use of Force and Application of Restraints

    a. "Restraint equipment or devices (e.g., handcuffs) may not be used in any of the following ways:

        i. As a method of punishing an inmate;

This continuation page is for the attempt at informal resolution **only**. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - 01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

    ii.    In a manner that causes unnecessary physical pain or extreme discomfort;

  b.  All incidents involving the use of force and the application of restraints (as specified in § 552.27) must be carefully documented."

9. PS 5270.09, Inmate Discipline Program, section § 541.6 Mentally Ill Inmates, "If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff."

  a.  Responsibility for Conduct: "You will not be disciplined for conduct committed when, as a result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act. The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff."

10. According to PS 3420.12 Standards of Employee Conduct, it further lists employee offenses and repercussions (pg 25-38):

  a.  Offense 13: "Disrespectful conduct, use of insulting, profane, abusive, obscene, or demeaning language or actions to or about others."

    i.    Explanation: "Includes verbal abuse of inmates, former inmates, their families, or friends (known or who should be known). Also includes profanity and disrespectful words or actions directed toward employees, visitors, or others"

  b.  Offense 20: "Endangering the safety of or causing injury to employees, inmates, or others through carelessness or failure to follow instructions."

  c.  Offense 47: "Falsification, misrepresentation, exaggeration, or concealment of material fact in writing or verbally."

  d.  Offense 73: "Failure to report or timely report a violation of the Standards of Conduct, or retaliation or discrimination against those who make such a report."

    i.    Explanation: "Offense includes failure to report violation of Program Statement, Government ethics regulations, EEO laws, and criminal laws. In particular, supervisors or managers must report sexual harassment observed by or reported to them. **No retaliation can be taken against employees or inmates who report any such violations.**"

  e.  "Employees who fail to conduct themselves in accordance with these standards [outlined in this Program Statement] will be subject to appropriate sanctions."

11. According to PS 5270.09 / 28 C.F.R. Part 541,

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - 01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

   a. "Staff shall give each inmate charged with violating a BOP rule a written copy of the incident report, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident" (28 C.F.R. § 541.5(a)).

   b. "The incident report shall describe the specific prohibited act(s) the inmate is charged with committing and the facts supporting the charge" (28 C.F.R. § 541.5(b)).

   c. "Discipline may be imposed only for violations of BOP rules" (28 C.F.R. § 541.3), rather than in a retaliatory or capricious manner.

   d. "If it appears an inmate is mentally ill, staff shall refer the inmate to mental health staff for assessment and recommendations" (28 C.F.R. § 541.6(c)).

   e. "You may appeal a DHO decision through the Administrative Remedy Program" (28 C.F.R. § 541.8(h)).

12. In Program Statement P5562.05 (Hunger Strikes), Section three guarantees that the "The health and welfare of any inmate on a hunger strike will be monitored," and "Every incident of an inmate on a hunger strike will be properly reviewed, documented, and reported."

   a. Section 8(b) - "Medical staff shall take and record weight and vital signs at least once every 24 hours while the inmate is on a hunger strike."

13. BOP Program Statement 5360.09 (Religious Beliefs and Practices) protects

   a. PS 5360.09, § 12 "Staff must ensure that religious meals are not altered, contaminated, or handled in a way that would compromise their religious certification."

   b. PS 5360.09, § 1 "Inmates have the right to practice their religion, consistent with the security and orderly running of the institution."

14. Program Statement 1330.18 §§ 1, 5 (Administrative Remedy Program) states that incarcerated individuals "have the right to seek formal review of an issue relating to any aspect of their confinement" and provides that "staff shall not impede an inmate's access to the Administrative Remedy Program."

15. Inmates have a constitutional right of access to the courts. Properly marked legal mail is afforded heightened protection and may not be read or copied outside the inmate's presence except under limited, authorized circumstances.

16. The copying of legal mail from counsel and the omission of pages from court documents interfered with the member's ability to pursue legal relief and constitutes improper interference with protected legal communications.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 - 01



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

17. According to the First Step Act, Section 601, the Law requires that the FBOP adjust the way offenders are designated within 500 miles of their release residence.

18. PS 6010.05 §2b states the following Core Principles of BOP Health Services:
    a. "Human Value - All inmates have value as human beings and deserve medically necessary health care."
    b. "Evidence-Based Care - Standards of care for inmates will employ proven treatment strategies, generally supported by outcome data."
    c. "Inmate Function - Medically necessary interventions will aim to improve inmate functioning to a level that facilitates performance of activities of daily living within the correctional environment."
    d. "Compassionate Care - Clinicians treating inmates will appropriately weigh the risks and benefits of various treatment options, and recognize and address the psychosocial needs of inmates with...serious medical conditions."

19. According to the BOP Handbook on page 35, Right number four states, "**You have the right to health care, which includes . . . medical . . treatment.**"

20. The BOP Program Statement on Patient Care (Program Statement 6031.01) states on page 6 that treatment must be given to incarcerated individuals suffering from "Medically Necessary – Non-Emergent" ailments. These include: "medical conditions that are not immediately life threatening but which without care the inmate could not be maintained without significant risk of: Serious deterioration leading to premature death. **Significant reduction in the possibility of repair later without present treatment.** Significant **pain or discomfort which impairs the inmate's participation in activities of daily living**."

21. PS 5566.06, Use of Force and Application of Restraints
    a. "Restraint equipment or devices (e.g., handcuffs) may not be used in any of the following ways:
        i.  As a method of punishing an inmate;
        ii. In a manner that causes unnecessary physical pain or extreme discomfort;
    b. All incidents involving the use of force and the application of restraints (as specified in § 552.27) must be carefully documented."

22. According to the BOP Handbook on page 35, Right number one states, "You have the right to expect that you will be treated in a respectful, impartial, and fair manner by all staff."

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 — 01

Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

23. BOP Mission Statement reads: "Corrections professionals who foster a humane and secure environment and ensure public safety by preparing individuals for successful reentry into our communities."

24. The Disciplinary Process is governed by 28 C.F.R. Part 541 and Program Statement 5270.09.

25. Section 541.6 specifically addresses inmates with mental illness and requires that disciplinary processes account for the inmate's mental condition and ensure that mental illness is not punished as misconduct.

26. Bureau classification policy requires that custody level determinations and management variables be based on accurate information and legitimate penological reasons.

27. The member's security level was increased and a management variable applied, resulting in transfer to a higher-security facility rather than a lower-security or reentry-oriented placement, despite a nearing release date. This action was inconsistent with reentry principles and appears retaliatory and pretextual.

28. The Bureau of Prisons' contraband policy is governed by Program Statement 5580.08, Inmate Personal Property. Program Statement 5580.08 establishes that inmate personal property may only be seized when it is prohibited or poses a legitimate security risk, and that staff must follow established procedures for inventory, documentation, and disposition of seized property. The policy further requires that when property is not authorized for retention, inmates must be afforded appropriate disposition options, including mailing property out at their expense when feasible. The seizure and destruction of the member's legal papers, personal correspondence, photographs, books, and RDAP materials without proper inventory, notice, or opportunity to send property home was not consistent with authorized contraband handling. The conduct described constitutes improper seizure and destruction of authorized personal and legal property, undertaken without due process and outside the scope of legitimate contraband enforcement.

29. Federal employees are prohibited from falsifying official records or making materially false statements in matters within federal jurisdiction.

30. BOP disciplinary and reporting policies require that incident reports be accurate, truthful, and based on observable facts. The creation of incident reports containing false or exaggerated allegations, mischaracterization of mental health disclosures as misconduct, and inaccurate descriptions of events violates Bureau policy and federal standards of honesty and integrity.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 -01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

31. Mental health professionals are required to exercise independent clinical judgment and to treat psychiatric symptoms therapeutically, not punitively. The conduct described reflects a gross deviation from accepted professional standards, including:

Failure to stabilize a patient experiencing hallucinations, suicidality, and severe psychological decompensation

Treating disclosures of psychiatric symptoms as disciplinary threats rather than clinical emergencies

Continuing clinician-patient contact after conflicts and PREA-related concerns without protective separation

Using deprivation, coercion, and isolation as substitutes for treatment

Ignoring known risks created by prior abuse and trauma

Such conduct reflects clinical abandonment and non-therapeutic treatment incompatible with professional standards required by Bureau policy and constitutional law.

## I.    Abuse of Authority and Conduct Unbecoming a Federal Officer

Federal correctional officers are entrusted with authority that must be exercised lawfully, professionally, and in furtherance of institutional safety and rehabilitation.

Conduct involving intimidation, threats, retaliatory discipline, sexual misconduct, unnecessary force, and deliberate indifference to medical and mental health needs constitutes an abuse of authority and conduct inconsistent with the duties of a federal correctional officer.

Such conduct undermines institutional legitimacy, violates Bureau policy, and directly contradicts the Bureau of Prisons' mission to foster a humane and secure environment.

## II. Falsification of Records and False Incident Reporting

Federal employees are prohibited from falsifying official records or making materially false statements in matters within federal jurisdiction.

BOP disciplinary and reporting policies require that incident reports be accurate, truthful, and based on observable facts.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 – 01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

The creation of incident reports containing false or exaggerated allegations, mischaracterization of mental health disclosures as misconduct, and inaccurate descriptions of events violates Bureau policy and federal standards of honesty and integrity.

## III. Criminal Deprivation of Rights Under Color of Law

Under 18 U.S.C. § 242, it is a federal crime for any person acting under color of law to willfully deprive another of rights secured by the Constitution or laws of the United States.

The pattern of excessive force, sexual abuse, deliberate indifference to serious medical and mental health needs, retaliatory discipline, and inhumane conditions of confinement, when committed by federal officials acting in their official capacity, implicates criminal deprivation of rights under color of law.

## IV. Criminal Conspiracy Against Rights

Under 18 U.S.C. § 241, it is a federal crime for two or more persons to conspire to injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of rights secured by the Constitution or laws of the United States.

Coordinated actions by multiple staff members to intimidate the member, suppress reporting, fabricate disciplinary charges, destroy property, and retaliate for protected activity support a reasonable inference of concerted conduct intended to deprive the member of constitutional rights.

## V. Witness Intimidation and Retaliation

Under 18 U.S.C. § 1512, it is unlawful to intimidate, threaten, or corruptly persuade another person with intent to influence, delay, or prevent testimony or reporting to authorities.

Threats and intimidation directed at the member for reporting misconduct, as well as efforts to suppress or discourage witnesses, constitute unlawful witness intimidation and retaliation and violate both criminal law and Bureau policy.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 - 01



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

## VII. Obstruction and Falsification of Records in Federal Matters

Under **18 U.S.C. § 1519**, it is unlawful to knowingly alter, destroy, conceal, or falsify records with the intent to impede or influence an investigation or proper administration of any matter within federal jurisdiction.

The destruction of legal documents, improper handling of grievance records, and falsification of incident reports raise serious concerns of obstruction and record manipulation in matters subject to federal oversight.

## VIII. Criminal Sexual Abuse and Abusive Sexual Contact by a Federal Officer

Federal law prohibits sexual abuse and abusive sexual contact by individuals acting under color of authority.

Under **18 U.S.C. §§ 2243(b) and 2244**, sexual contact or abusive sexual conduct by a custodial authority against a person in official detention constitutes a criminal offense.

Sexual humiliation, coerced nudity, unwanted sexual touching, and abuse committed by staff in a custodial setting fall squarely within the conduct prohibited by these statutes.

## IX. Systemic Failure of Oversight and Supervisory Responsibility

Supervisory and regional officials are responsible for ensuring compliance with constitutional standards, Bureau policy, and federal law.

By approving, ratifying, or failing to correct known abuses, improper discipline, retaliatory transfers, misuse of management variables, and interference with reentry preparation and grievance processes, supervisory and regional officials became participants in and enablers of ongoing violations.

## X. Criminal Deprivation of Rights Under Color of Law

Under 18 U.S.C. § 242, it is a federal crime for any person acting under color of law to willfully deprive another of rights secured by the Constitution or laws of the United States.

## XII. Failure to Respond to Medical Emergency and Resulting Death of Another Inmate

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - 01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

Bureau of Prisons medical and emergency response policies require staff to promptly respond to medical emergencies, notify medical personnel, and take reasonable measures to preserve life.

**Argument:**

a) The Federal Bureau of Prisons is charged with the lawful confinement of individuals as punishment imposed by a court, not with the infliction of additional punishment beyond the sentence itself. Incarceration is not intended to strip an individual of basic human dignity, medical care, or mental health treatment, nor to subject an individual to torture, retaliation, or abuse. Yet that is precisely what occurred here.

b) Mr. Shane Cratty entered the custody of the Federal Bureau of Prisons with documented and serious medical and mental health needs. Once confined, BOP officials, including wardens, supervisory staff, medical personnel, and psychological staff, assumed an affirmative constitutional duty to provide adequate medical and mental health care consistent with Bureau policy, professional standards, and the Eighth Amendment. That duty was repeatedly and systematically breached.

c) Rather than continuing appropriate mental health and medical treatment, staff failed to properly evaluate, medicate, and therapeutically treat Mr. Cratty's deteriorating condition. The failure to provide adequate care was not isolated or inadvertent; it was persistent, knowing, and compounded over time. As his untreated mental illness worsened, staff observed escalating distress, impaired functioning, sleep deprivation, suicidality, and crisis behavior. These were not subtle indicators. They were overt, documented, and repeatedly communicated.

d) For an individual already struggling with the psychological reality of incarceration particularly one who believed himself over-sentenced or wrongfully convicted the willful neglect and mistreatment by medical and mental health staff carried an amplified psychological impact. When those entrusted with care dismiss, demean, or intentionally withhold treatment, the resulting harm is magnified for a person suffering from serious mental illness. What might otherwise be distress becomes overwhelming. What might otherwise be frustration becomes destabilization.

f) Instead of recognizing that Mr. Cratty's conduct was the manifestation of untreated mental illness requiring clinical intervention, staff treated his symptoms as misconduct. Rather than

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 -01

indifference, retaliation, physical abuse, sexual abuse, punitive discipline, and reentry sabotage constitutes mental and physical torture. Mr. Cratty's confinement was transformed into an environment of constant psychological assault and physical harm, rendering his punishment unconstitutional.

m) The Eighth Amendment does not permit the government to ignore serious mental illness, punish its symptoms, retaliate against complaints, and escalate confinement in response to suffering. By failing to provide adequate medical and mental health care, and by responding to Mr. Cratty's deterioration with abuse and retaliation rather than treatment, the Bureau of Prisons and its officials subjected him to cruel and unusual punishment in violation of the Constitution.

n) The Constitution does not permit incarceration to become a mechanism for punishment beyond the sentence imposed, nor does it allow prison officials to retaliate against protected activity by inflicting pain, deprivation, or humiliation. Yet the facts alleged here show that from the earliest stages of Shane Cratty's confinement, staff repeatedly responded to his medical needs, mental health crises, religious observance, and protected speech not with care or neutrality, but with force, discipline, neglect, and retaliation. These actions violated clearly established constitutional law, binding federal regulations, and multiple Bureau of Prisons Program Statements, and together created conditions of confinement that were cruel, dangerous, and unlawful.

o) The Eighth Amendment prohibits the unnecessary and wanton infliction of pain, including deliberate indifference to serious medical and mental health needs. Mr. Cratty entered custody with documented medical conditions and prescriptions that were abruptly discontinued without review, evaluation, or clinical justification. Despite repeated complaints of severe pain, inflammation, and later hematemesis (vomiting blood), medical staff failed to provide timely or adequate care. On more than one occasion, Shane was sent back to his unit while actively experiencing medical emergencies, and when he sought urgent assistance by activating the duress system, he was punished rather than treated. These facts establish deliberate indifference under *Estelle v. Gamble* and *Farmer v. Brennan*, where officials knew of and disregarded substantial risks to serious health.

p) The same indifference permeated Mr. Cratty's mental health treatment. He repeatedly reported suicidal ideation, hallucinations, paranoia, and fear of staff retaliation. Instead of receiving sustained mental health care, he was placed in segregation, restrained, or disciplined. Psychology

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - 01



staff minimized or dismissed symptoms, failed to conduct adequate evaluations, and in some instances documented delusional statements as misconduct rather than signs of acute illness. Shane was removed from suicide watch despite ongoing suicidal thoughts and explicit fears of retaliation, directly contradicting professional standards and BOP mental health policy. The predictable result was further psychological deterioration, exacerbated by isolation, deprivation, and fear.

q) Force and restraints were repeatedly used against Shane in ways that violated both constitutional standards and BOP policy. He was dog-piled by multiple officers during mental health crises, dragged while restrained, slammed into walls, stripped naked, and placed in painful restraint positions without necessity or justification. Restraints were applied for punitive purposes rather than safety, causing unnecessary pain and humiliation. Under *Whitley v. Albers* and *Hope v. Pelzer*, force applied maliciously or for the purpose of causing harm, particularly where the individual is compliant or already restrained, violates the Eighth Amendment. The cruelty here was obvious, and no reasonable officer could have believed such conduct was lawful.

r) Disciplinary proceedings compounded these constitutional violations. Shane was repeatedly charged with misconduct arising directly from medical or mental health crises, protected speech, or help-seeking behavior. Incident reports were untimely, vague, exaggerated, or fabricated, in violation of BOP disciplinary policy. Disciplinary Hearing Officers proceeded with hearings despite clear evidence that Shane was mentally incapable of understanding the charges or participating meaningfully, failed to consider mental health defenses, and ignored exculpatory evidence. Sanctions were imposed without reliable evidentiary support, resulting in loss of liberty interests, prolonged segregation, and an unjustified increase in security classification. These proceedings violated due process under *Wolff v. McDonnell* and rendered the resulting discipline unconstitutional.

s) Shane's hunger strikes were likewise mishandled in violation of mandatory policy. Rather than triggering consistent medical monitoring, daily clinical assessments, and physician oversight as required, his refusal of food was largely ignored or treated as a disciplinary issue. Required documentation was missing or incomplete, weight and vital signs were not reliably tracked, and responsibility for monitoring his condition was improperly shifted to non-medical staff or other incarcerated individuals. This failure to follow hunger strike protocols placed Shane at serious risk of physical harm and reflects deliberate indifference to a known medical danger.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 - 01



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

t) Religious exercise was also deliberately burdened. Mr. Cratty was approved for kosher meals, yet staff repeatedly removed food from sealed packaging and placed it into unsealed bags, rendering it non-kosher and forcing him to choose between violating his faith or going hungry. He was denied access to religious texts for extended periods, harassed or mocked for religious observance, and threatened with punishment for asserting religious rights. These actions violated the First Amendment, RLUIPA, and BOP policy guaranteeing the right to practice religion absent a legitimate penological interest. No such interest existed; the interference was malicious and punitive.

u) When Shane attempted to challenge these conditions through the Administrative Remedy Program, that process was systematically obstructed. Staff refused to provide receipts, tracking information, or response deadlines, denied access to required forms, and failed to respond within mandatory timeframes. Remedies were rejected on improper grounds or simply ignored, depriving Shane of meaningful access to redress and preventing timely appeals of disciplinary actions that directly affected his liberty and security classification. This obstruction violated BOP policy and further insulated misconduct from review.

v) The record also reflects egregious violations of PREA and basic standards of human dignity. Mr. Cratty reported sexual abuse and harassment by a lieutenant, including forced nudity, inappropriate touching, and sexually humiliating comments. Instead of being protected, he was threatened explicitly for filing the report and subjected to escalating retaliation. PREA requires immediate protection from alleged abusers, prompt and impartial investigation, and freedom from retaliation. None of these safeguards were honored. The response to Shane's report communicated unmistakably that reporting abuse would result in further harm.

w) Shane Cratty was also treated differently from similarly situated individuals without rational basis. His property was destroyed or withheld, his emergencies were punished rather than addressed, his religious accommodations were interfered with, and his grievances obstructed in ways not imposed on others. This disparate treatment supports an Equal Protection "class-of-one" claim, as it was intentional, irrational, and punitive.

x) Retaliation is the unifying aspect connecting these violations. The First Amendment protects the right to file grievances, seek medical and mental health care, report sexual abuse, and practice religion. Under *Thaddeus-X v. Blatter*, retaliation requires protected conduct, adverse action, and a causal connection. Shane Cratty engaged in protected activity repeatedly and

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - 01



consistently. He suffered adverse actions each time: weaponized placement in solitary confinement and suicide watch, unjustified disciplinary charges, excessive force, deprivation of food and medical care, and increased security classification. The causal connection is established by timing, explicit threats, and the escalating severity of punishment following each assertion of rights. This was not a coincidence; it was reprisal.

y) Viewed in isolation, each violation is serious. Viewed together, they reveal a confinement environment governed by punishment rather than legal policy, retaliation rather than order, and indifference rather than care. Because Shane Cratty was subjected to cruel and unusual punishment, denied due process, retaliated against for protected activity, deprived of religious exercise, obstructed from redress, and exposed to unchecked abuse, he is entitled to relief.

## Moral Argument

At its core, the conduct described reflects a deeply rooted moral failure that mirrors the slavery and Jim Crow mindset embedded in American institutional culture. That mindset teaches that certain people are disposable, that suffering can be ignored when it belongs to the marginalized, and that power may be exercised without accountability over those deemed lesser. In this case, mental illness became the marker of disposability. Rather than recognizing Mr. Cratty as a human being in need of care, dignity, and treatment, those responsible treated his suffering as an inconvenience and his deterioration as justification for further punishment. This is not merely neglect. It is the moral logic of dehumanization.

When institutions normalize the mistreatment of people with mental illness, they reproduce the same logic that once justified chains, isolation, and silence under slavery and Jim Crow. The choice to punish instead of heal, to retaliate instead of intervene, and to discard instead of protect reflects an acceptance of cruelty as ordinary and acceptable. Morally, this conduct is indefensible. A system that claims legitimacy cannot excuse itself by hiding behind policy while violating the most basic obligation of humanity, which is to recognize suffering and respond with care rather than contempt.

## Request for Relief

Shane Cratty respectfully requests that the Federal Bureau of Prisons immediately cease and desist from all forms of unjust punishment, medical and mental health neglect, abuse, retaliation,

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 -01



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

intimidation, and interference by any staff at his current institution, including all custody, medical, psychological, supervisory, and administrative personnel. The member further requests immediate assurance that no retaliation of any kind will be taken against him for filing this civil rights complaint, and that he be promptly provided with medically and psychologically appropriate care as required by law and Bureau policy, including proper evaluation, medication management, and therapeutic treatment sufficient to stabilize his mental health and ensure his safety.

The member requests that all violations and incidents described herein be formally investigated, including actions and omissions by line staff, medical staff, psychology staff, supervisory officials, wardens, and Regional Office personnel. The member further requests that the Bureau immediately preserve all records and evidence related to this matter for future investigation and potential litigation, including but not limited to medical and mental health records, suicide watch logs, disciplinary and incident reports, use-of-force documentation, PREA-related records, administrative remedy records, classification and transfer records, First Step Act and reentry documentation, officer notes, emails, memoranda, and all video recordings from cameras covering relevant locations, dates, and times referenced in this complaint.

The member further requests that all staff involved in the failure to apply First Step Act credits, initiate timely reentry preparation, properly classify custody level, and avoid retaliatory transfer be investigated and held accountable, including Regional Office officials who approved or ratified such actions. Corrective measures should include immediate review and correction of custody classification, removal of any improper management variable, initiation of appropriate reentry planning, and placement decisions consistent with policy and the member's proximity to release. Additional corrective action should include separation from staff implicated in abuse or retaliation, mandatory retraining, and referral for disciplinary action where warranted.

That the actions of staff who violated Bureau of Prisons policy, constitutional standards, PREA requirements, medical and mental health protocols, disciplinary procedures, religious accommodation policies, and Administrative Remedy Program requirements be reviewed, investigated, and addressed through appropriate corrective action consistent with BOP policy (detailed in "Grounds for Relief", section 10). This included (but is not limited to) the following individuals:

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 – 01



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

- Dr. Kraft (Physician) - Discontinued all prescribed pain and inflammation medications without reviewing medical records; dismissed serious symptoms based on age and stereotyping; repeatedly failed to provide adequate medical care during medical emergencies.
- Dr. Haughawout (Psychologist) - Failed to respond appropriately to psychiatric emergencies; mischaracterized auditory hallucinations and help-seeking disclosures as disciplinary threats; participated in deprivation of basic necessities; continued involvement despite conflicts arising from PREA reporting.
- Dr. Adams (Psychology Intern) - Provided clinically inappropriate guidance during a mental health crisis by affirming delusions rather than initiating crisis intervention.
- Dr. Eldridge (Psychology Intern) - Arbitrarily "unauthorized" blanket during suicide watch without documented safety justification.
- Dr. Shemin / Dr. Halbsgut (Psychologists) - Refused to document hunger strike and suicidal ideation as required by policy; escalated protected disclosures into disciplinary action.
- Lt. B. Hackett - Engaged in excessive force, verbal abuse, sexual assault, humiliation, threats of retaliation for PREA reporting, falsification of incident reports, and misuse of restraints.
- Lt. Criss - Participated in use of excessive force during removal of blanket; authorized or failed to prevent physical assaults during suicide watch.
- Lt. Harrison - Failed to respond appropriately to a medical emergency resulting in the death of another incarcerated individual; delayed and denied emergency medical care.
- Lt. Smith - Participated in or failed to intervene in excessive force incidents and deprivation of food.
- Lt. Reynolds - Failed to ensure hunger strike documentation and medical monitoring; involved in retaliatory confinement decisions.
- Lt. Mion - Improperly placed Mr. Cratty in a dry cell during protected religious observance without disciplinary basis.
- Officer K. Davis - Issued retaliatory incident report for use of duress button during a medical emergency; verbally abusive conduct.
- Officer Yow - Failed to contact mental health staff during a known psychiatric crisis; participated in retaliatory escalation.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 – 01



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

- Officer Clark - Present during excessive force and failed to intervene.
- Officer Blake - Repeatedly denied basic necessities during suicide watch; participated in excessive force during cell extraction.
- Officer Bilohlavek - Participated in excessive force during removal from suicide watch.
- Officer Hargrove - Used excessive force by slamming a tray slot on Mr. Cratty's arm; denied food and basic necessities.
- Officer Hughes - Used excessive force by slamming a tray slot on Mr. Cratty's wrist; refused to contact supervisory staff.
- Officer Noble - Acted with deliberate indifference during a medical emergency; mocked concerns regarding an unresponsive incarcerated individual.
- Officer Gladden / Officer Adcock - Failed to respond to reports of suicidal ideation or contact psychology.
- Officer Walker - Failed to provide appropriate response during acute mental health episode.
- Officer Hendricks - Harassed and interfered with protected religious observance; attempted unauthorized confiscation of medical footwear.
- Case Manager J. Wright - Obstructed access to the Administrative Remedy Program by refusing to provide receipts, tracking information, or response timelines; provided misleading information prior to retaliatory transfer.
- Warden (FCI Butner) - Failed to intervene in widespread policy violations; personally engaged in verbal abuse; permitted systemic retaliation, medical neglect, and unconstitutional conditions to persist.

Finally, the member requests compensation for the constitutional and policy violations suffered, including cruel and unusual punishment, deliberate indifference to serious medical and mental health needs, medical neglect, retaliation, excessive force, sexual abuse, and related harms. The member seeks compensation for each violation individually, including punitive damages, in a total initial amount of $70,000,000, to account for the severity, duration, and cumulative impact of the abuses described, as well as to deter future misconduct and vindicate fundamental civil rights.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - 01

## [CONTINUATION PAGE FOR INFORMAL RESOLUTION ATTEMPT – BP-8]



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David & Kit @ The Remedy Project

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [January/  /2026], _____, 28 U.S.C. § 1746.

In accordance with Program Statement 1330.018, §542.11 titled "RESPONSIBILITY" (a)(7)and (8), please return a response to this BP-8 remedy filing to the above listed person within **five working days**; when attached to a BP-9 please return a receipt within **five working days**.

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-01

30

# Exhibit A

## Administrative Remedy Filings

**(BP-9/BP-10 materials prepared and submitted)**

The Remedy Project
Tasleemah Lawal, Esq.
Attorney at Law
PO Box 50203
Brooklyn, NY 11205
intake@theremedyproj.org
(929) 224-0380



the **REMEDY PROJECT**
Students advocating for the humanity of incarcerated people

## <u>BP-8/9 Submittal — Shane Cratty (#SC439-03)</u>
## Submitted through the Unit Counselor or Unit Manager

I, Shane Cratty, hereby submit this BP-9 with an attached BP-8, for the Warden to address. I affirm that this submission is in compliance with the policy specified in Program Statement 1330.18.

As such:

- **This Request for Administrative Remedy BP-9 should not be rejected under the false pretense that it has been submitted with too many continuation pages attached.**
    - o    This BP-9 is being submitted with no continuation pages, in accordance with PS 1330.18 §542.14(c)(3).
    - o    The Warden and/or staff reviewing the issue may consult the BP-8 informal resolution attached hereto, and its continuation pages, to reference the issue in its entirety. The number of continuation pages included alongside this BP-8 informal resolution is unregulated, as per PS 1330.18 §542.13(a).

- **This Request for Administrative Remedy BP-9 should not be rejected under the false pretense that BP-8 informal resolution was not attempted prior to submission of administrative remedy, or that evidence of the attempt at informal resolution was not provided.**
    - o    PS 1330.18 §542.13(b) dictates that "An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution." As the issue addressed within is not capable of being resolved at the unit team level, it is thus a necessity to immediately elevate this issue to the formal Request for Administrative Remedy level (BP-9).

- **This Request for Administrative Remedy BP-9 should not be rejected on the basis that the attached BP-8 informal resolution was not provided on a specific institutional form.**
    - o    PS 1330.18 §542.13(a) states that "[e]ach warden shall establish procedures to allow for the informal resolution of inmate complaints" and that "[t]hese procedures may not operate to limit inmate access to formal filing of a Request."
    - o    PS 1330.18 §542.16(a) provides that "[a]n inmate may…obtain assistance from outside sources, such as family members or attorneys[.]"
    - o    Since there is no public access to specific institutional BP-8 informal resolution forms, and staff refuse to provide the forms to incarcerated individuals for the purpose of assistance via outside sources, a rejection on this basis would severely limit access to formal filing of a Request and would therefore be a direct, unfair hindrance to my due process rights.

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

_Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse._

From: __Cratty, Shane_____ __43951-480__ _____ __USP Canaan__
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.        UNIT      INSTITUTION

**Part A– INMATE REQUEST**

I am Submitting this BP-9 without a response to the BP-8 Attached hereto because this request Cannot be resolved at the unit team level.

This Correspondence is Submitted to USP Canaan Warden to request appropriate medical and Mental health evaluation and Continuity of Care for Mr. Shane Cratty.
(See Continuation Pages)

_____       _____
       DATE                         SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____       _____
       DATE                          WARDEN OR REGIONAL DIRECTOR

_If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response._

**ORIGINAL: RETURN TO INMATE**            CASE NUMBER: _____

                                                 CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____ _____ _____ _____
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.       UNIT       INSTITUTION

# ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". "The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.
***********************************************************************************************

To be completed by the Counselor:

Inmate's Name___Shane Cratty___ Reg #___43951-480___ Date_____ ____

Date and time given to inmate.___ ___ _____ ___    _____
***********************************************************************************************

To be completed by the Inmate:

1. Nature of Problem: This correspondence is submitting to USP Canaan warden to request appropriate medical and mental health evaluation and continuity of care for Mr. Shane Cratty who is currently housed at USP Canaan.

   (SEE CONTINUATION PAGES)


2. State what action or resolution you expect.
   (SEE CONTINUATION PAGES)




***********************************************************************************************

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:


3. Actions staff members have taken to resolve the matter informally:


***********************************************************************************************
Counselor to check applicable section:

( )  Problem informally resolved on_____

( )  Problem not resolved. Continue formal procedure.
     Explanation for Non-Resolution:


***********************************************************************************************

Date: _____     Counselor's Signature: _____

Date: _____     Unit Manager's Signature: _____

              Inmate's Signature:

SC439 - 03



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David @ The Remedy Project

1

### Re: Medical and Mental Health Care Request – Mr. Shane Cratty
### Location: USP Canaan

This correspondence is submitted to USP Canaan Warden to request appropriate medical and mental health evaluation and continuity of care for Mr. Shane Cratty, who is currently housed at USP Canaan.

Dear Warden, Over the course of several years in federal custody, Mr. Cratty has experienced ongoing and unresolved medical and mental health issues. During this period, his medical and psychiatric care has been inconsistent, interrupted, and at times insufficient to meet the standards required for adequate functioning within a correctional environment. As a result, his physical health and mental stability have deteriorated rather than improved.

Mr. Cratty has a documented history of serious mental health concerns, including depression, psychological distress, sleep disruption, and periods of significant emotional dysregulation. He has also reported ongoing physical health issues, including chronic pain and other conditions for which he was previously prescribed medication. At various points during his incarceration, medications that had been prescribed prior to or earlier in custody were discontinued without a comprehensive review of his medical records or an appropriate clinical reassessment. In at least one instance, a provider reportedly dismissed the continuation of prescribed treatment without evaluation, stating that medication was unnecessary due to Mr. Cratty's age and implying misuse rather than addressing clinical need. These interruptions contributed to worsening symptoms and instability.

In addition, Mr. Cratty has experienced episodes of acute physical illness requiring medical attention, as well as periods of significant weight loss, sleep deprivation, and psychological distress. These conditions have compounded one another over time. The cumulative effect has been a prolonged decline in both mental and physical well-being, leaving him unable to achieve or maintain a stable baseline of health.

This request is not intended to relitigate past care decisions, but rather to ensure that, at his current institution, Mr. Cratty receives a thorough and independent medical and mental health assessment, including review of prior records, medication history, and current symptom presentation. He respectfully requests evaluation by qualified medical and mental health

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-03



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David @ The Remedy Project

2

providers, appropriate diagnostic assessment, and treatment planning consistent with Bureau policy and professional standards of care.

Accordingly, we request that USP Canaan Health Services:

1. Evaluate Mr. Crady for appropriate psychiatric care, including medication management and therapeutic support.
2. Conduct a comprehensive medical and mental health intake review, including prior records and medication history.
3. Assess ongoing physical health concerns and chronic pain issues to determine medically necessary treatment.
4. Establish a continuity-of-care plan designed to stabilize his health and support normal functioning within the institution.

The goal of this request is to ensure that Mr. Cratty's medical and mental health needs are appropriately addressed moving forward, so that he may maintain stability, safety, and basic functioning while in custody.

Thank you for your attention to this matter and for ensuring that Mr. Cratty receives care consistent with Bureau standards.

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [January/   /2026], _____,
28 U.S.C. § 1746.

In accordance with Program Statement 1330.018, §542.11 titled "RESPONSIBILITY" (a)(7)and (8), please return a response to this BP-8 remedy filing to the above listed person within **five working days**; when attached to a BP-9 please return a receipt within **five working days**.

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-03

## ATTEMPT AT INFORMAL RESOLUTION
(Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". "The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

Inmate's Name____Shane Cratty_____ Reg #__43951-480____ Date_____

Date and time given to inmate.____ __ _____ ___    _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Inmate:

1. Nature of Problem: This correspondence is submitting to USP Canaan warden to request appropriate medical and mental health evaluation and continuity of care for Mr. Shane Cratty who is currently housed at USP Canaan.

(SEE CONTINUATION PAGES)

2. State what action or resolution you expect.
   (SEE CONTINUATION PAGES)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Counselor to check applicable section:

( ) Problem informally resolved on_____

( ) Problem not resolved. Continue formal procedure.
    Explanation for Non-Resolution:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Date: _____    Counselor's Signature: _____

Date: _____    Unit Manager's Signature: _____

Date: _____    Inmate's Signature: _____

SC439-03

Name: Shane Cratty   Reg. No. 43951-480
Assisted by David @ The Remedy Project

1

### Re: Medical and Mental Health Care Request – Mr. Shane Cratty
### Location: USP Canaan

This correspondence is submitted to USP Canaan Warden to request appropriate medical and mental health evaluation and continuity of care for Mr. Shane Cratty, who is currently housed at USP Canaan.

Dear Warden,  Over the course of several years in federal custody, Mr. Cratty has experienced ongoing and unresolved medical and mental health issues. During this period, his medical and psychiatric care has been inconsistent, interrupted, and at times insufficient to meet the standards required for adequate functioning within a correctional environment. As a result, his physical health and mental stability have deteriorated rather than improved.

Mr. Cratty has a documented history of serious mental health concerns, including depression, psychological distress, sleep disruption, and periods of significant emotional dysregulation. He has also reported ongoing physical health issues, including chronic pain and other conditions for which he was previously prescribed medication. At various points during his incarceration, medications that had been prescribed prior to or earlier in custody were discontinued without a comprehensive review of his medical records or an appropriate clinical reassessment. In at least one instance, a provider reportedly dismissed the continuation of prescribed treatment without evaluation, stating that medication was unnecessary due to Mr. Cratty's age and implying misuse rather than addressing clinical need. These interruptions contributed to worsening symptoms and instability.

In addition, Mr. Cratty has experienced episodes of acute physical illness requiring medical attention, as well as periods of significant weight loss, sleep deprivation, and psychological distress. These conditions have compounded one another over time. The cumulative effect has been a prolonged decline in both mental and physical well-being, leaving him unable to achieve or maintain a stable baseline of health.

This request is not intended to relitigate past care decisions, but rather to ensure that, at his current institution, Mr. Cratty receives a thorough and independent medical and mental health assessment, including review of prior records, medication history, and current symptom presentation. He respectfully requests evaluation by qualified medical and mental health

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 - 03



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David @ The Remedy Project

2

providers, appropriate diagnostic assessment, and treatment planning consistent with Bureau policy and professional standards of care.

Accordingly, we request that USP Canaan Health Services:

1. Evaluate Mr. Crady for appropriate psychiatric care, including medication management and therapeutic support.
2. Conduct a comprehensive medical and mental health intake review, including prior records and medication history.
3. Assess ongoing physical health concerns and chronic pain issues to determine medically necessary treatment.
4. Establish a continuity-of-care plan designed to stabilize his health and support normal functioning within the institution.

The goal of this request is to ensure that Mr. Cratty's medical and mental health needs are appropriately addressed moving forward, so that he may maintain stability, safety, and basic functioning while in custody.

Thank you for your attention to this matter and for ensuring that Mr. Cratty receives care consistent with Bureau standards.

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [January/   /2026], _____,
28 U.S.C. § 1746.

In accordance with Program Statement 1330.018, §542.11 titled "RESPONSIBILITY" (a)(7)and (8), please return a response to this BP-8 remedy filing to the above listed person within **five working days**; when attached to a BP-9 please return a receipt within **five working days**.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439-03

# ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". "The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

Inmate's Name ___ Shane Cratty ___ Reg # ___ 43951-480 ___ Date ___ ___

Date and time given to inmate. ___ ___ ___ ___ ___

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Inmate:

1. Nature of Problem: This correspondence is submitting to USP Canaan warden to request appropriate medical and mental health evaluation and continuity of care for Mr. Shane Cratty who is currently housed at USP Canaan.

   (SEE CONTINUATION PAGES)

2. State what action or resolution you expect.
   (SEE CONTINUATION PAGES)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Counselor to check applicable section:

(  ) Problem informally resolved on ___

(  ) Problem not resolved. Continue formal procedure.
    Explanation for Non-Resolution:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Date: ___ ___ Counselor's Signature: ___

Date: ___ ___ Unit Manager's Signature: ___

Date: Inmate's Signature:

SC439-03



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David @ The Remedy Project

1

### Re: Medical and Mental Health Care Request – Mr. Shane Cratty
### Location: USP Canaan

This correspondence is submitted to USP Canaan Warden to request appropriate medical and mental health evaluation and continuity of care for Mr. Shane Cratty, who is currently housed at USP Canaan.

Dear Warden,  Over the course of several years in federal custody, Mr. Cratty has experienced ongoing and unresolved medical and mental health issues. During this period, his medical and psychiatric care has been inconsistent, interrupted, and at times insufficient to meet the standards required for adequate functioning within a correctional environment. As a result, his physical health and mental stability have deteriorated rather than improved.

Mr. Cratty has a documented history of serious mental health concerns, including depression, psychological distress, sleep disruption, and periods of significant emotional dysregulation. He has also reported ongoing physical health issues, including chronic pain and other conditions for which he was previously prescribed medication. At various points during his incarceration, medications that had been prescribed prior to or earlier in custody were discontinued without a comprehensive review of his medical records or an appropriate clinical reassessment. In at least one instance, a provider reportedly dismissed the continuation of prescribed treatment without evaluation, stating that medication was unnecessary due to Mr. Cratty's age and implying misuse rather than addressing clinical need. These interruptions contributed to worsening symptoms and instability.

In addition, Mr. Cratty has experienced episodes of acute physical illness requiring medical attention, as well as periods of significant weight loss, sleep deprivation, and psychological distress. These conditions have compounded one another over time. The cumulative effect has been a prolonged decline in both mental and physical well-being, leaving him unable to achieve or maintain a stable baseline of health.

This request is not intended to relitigate past care decisions, but rather to ensure that, at his current institution, Mr. Cratty receives a thorough and independent medical and mental health assessment, including review of prior records, medication history, and current symptom presentation. He respectfully requests evaluation by qualified medical and mental health

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-03



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

2

providers, appropriate diagnostic assessment, and treatment planning consistent with Bureau policy and professional standards of care.

Accordingly, we request that USP Canaan Health Services:

1. Evaluate Mr. Crady for appropriate psychiatric care, including medication management and therapeutic support.
2. Conduct a comprehensive medical and mental health intake review, including prior records and medication history.
3. Assess ongoing physical health concerns and chronic pain issues to determine medically necessary treatment.
4. Establish a continuity-of-care plan designed to stabilize his health and support normal functioning within the institution.

The goal of this request is to ensure that Mr. Cratty's medical and mental health needs are appropriately addressed moving forward, so that he may maintain stability, safety, and basic functioning while in custody.

Thank you for your attention to this matter and for ensuring that Mr. Cratty receives care consistent with Bureau standards.

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [January/    /2026], _____,
28 U.S.C. § 1746.

In accordance with Program Statement 1330.018, §542.11 titled "RESPONSIBILITY" (a)(7)and (8), please return a response to this BP-8 remedy filing to the above listed person within **five working days**; when attached to a BP-9 please return a receipt within **five working days**.

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-03

# ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". "The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

Inmate's Name __Shane Cratty__   Reg # __43951-480__   Date_____

Date and time given to inmate. _____   _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Inmate:

1. Nature of Problem: This correspondence is submitting to USP Canaan warden to request appropriate medical and mental health evaluation and continuity of care for Mr. Shane Cratty who is currently housed at USP Canaan.

   (SEE CONTINUATION PAGES)

2. State what action or resolution you expect.
   (SEE CONTINUATION PAGES)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Counselor to check applicable section:

( ) Problem informally resolved on_____

( ) Problem not resolved. Continue formal procedure.
      Explanation for Non-Resolution:

_____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Date: _____   Counselor's Signature: _____

Date: _____   Unit Manager's Signature: _____

_____   Inmate's Signature: _____

SC439-03

Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

1

### Re: Medical and Mental Health Care Request – Mr. Shane Cratty
### Location: USP Canaan

This correspondence is submitted to USP Canaan Warden to request appropriate medical and mental health evaluation and continuity of care for Mr. Shane Cratty, who is currently housed at USP Canaan.

Dear Warden,  Over the course of several years in federal custody, Mr. Cratty has experienced ongoing and unresolved medical and mental health issues. During this period, his medical and psychiatric care has been inconsistent, interrupted, and at times insufficient to meet the standards required for adequate functioning within a correctional environment. As a result, his physical health and mental stability have deteriorated rather than improved.

Mr. Cratty has a documented history of serious mental health concerns, including depression, psychological distress, sleep disruption, and periods of significant emotional dysregulation. He has also reported ongoing physical health issues, including chronic pain and other conditions for which he was previously prescribed medication. At various points during his incarceration, medications that had been prescribed prior to or earlier in custody were discontinued without a comprehensive review of his medical records or an appropriate clinical reassessment. In at least one instance, a provider reportedly dismissed the continuation of prescribed treatment without evaluation, stating that medication was unnecessary due to Mr. Cratty's age and implying misuse rather than addressing clinical need. These interruptions contributed to worsening symptoms and instability.

In addition, Mr. Cratty has experienced episodes of acute physical illness requiring medical attention, as well as periods of significant weight loss, sleep deprivation, and psychological distress. These conditions have compounded one another over time. The cumulative effect has been a prolonged decline in both mental and physical well-being, leaving him unable to achieve or maintain a stable baseline of health.

This request is not intended to relitigate past care decisions, but rather to ensure that, at his current institution, Mr. Cratty receives a thorough and independent medical and mental health assessment, including review of prior records, medication history, and current symptom presentation. He respectfully requests evaluation by qualified medical and mental health

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 – 03



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David @ The Remedy Project

2

providers, appropriate diagnostic assessment, and treatment planning consistent with Bureau policy and professional standards of care.

Accordingly, we request that USP Canaan Health Services:

1. Evaluate Mr. Crady for appropriate psychiatric care, including medication management and therapeutic support.
2. Conduct a comprehensive medical and mental health intake review, including prior records and medication history.
3. Assess ongoing physical health concerns and chronic pain issues to determine medically necessary treatment.
4. Establish a continuity-of-care plan designed to stabilize his health and support normal functioning within the institution.

The goal of this request is to ensure that Mr. Cratty's medical and mental health needs are appropriately addressed moving forward, so that he may maintain stability, safety, and basic functioning while in custody.

Thank you for your attention to this matter and for ensuring that Mr. Cratty receives care consistent with Bureau standards.

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [January/    /2026], _____,
28 U.S.C. § 1746.

In accordance with Program Statement 1330.018, §542.11 titled "RESPONSIBILITY" (a)(7)and (8), please return a response to this BP-8 remedy filing to the above listed person within **five working days**; when attached to a BP-9 please return a receipt within **five working days**.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-03

# Exhibit A

## Administrative Remedy Filings

(BP-9/BP-10 materials prepared and submitted)

The Remedy Project
Tasleemah Lawal, Esq.
Attorney at Law
PO Box 50203
Brooklyn, NY 11205
intake@theremedyproj.org
(929) 224-0380



the **REMEDY PROJECT**
Students advocating for the humanity of incarcerated people

## <u>BP-8/9 Submittal — Shane Cratty (#SC439-02)</u>
### Submitted through the Unit Counselor or Unit Manager

I, Shane Cratty, hereby submit this BP-9 with an attached BP-8, for the Warden to address. I affirm that this submission is in compliance with the policy specified in Program Statement 1330.18.

As such:
- **This Request for Administrative Remedy BP-9 should not be rejected under the false pretense that it has been submitted with too many continuation pages attached.**
    - This BP-9 is being submitted with no continuation pages, in accordance with PS 1330.18 §542.14(c)(3).
    - The Warden and/or staff reviewing the issue may consult the BP-8 informal resolution attached hereto, and its continuation pages, to reference the issue in its entirety. The number of continuation pages included alongside this BP-8 informal resolution is unregulated, as per PS 1330.18 §542.13(a).

- **This Request for Administrative Remedy BP-9 should not be rejected under the false pretense that BP-8 informal resolution was not attempted prior to submission of administrative remedy, or that evidence of the attempt at informal resolution was not provided.**
    - PS 1330.18 §542.13(b) dictates that "An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution." As the issue addressed within is not capable of being resolved at the unit team level, it is thus a necessity to immediately elevate this issue to the formal Request for Administrative Remedy level (BP-9).

- **This Request for Administrative Remedy BP-9 should not be rejected on the basis that the attached BP-8 informal resolution was not provided on a specific institutional form.**
    - PS 1330.18 §542.13(a) states that "[e]ach warden shall establish procedures to allow for the informal resolution of inmate complaints" and that "[t]hese procedures may not operate to limit inmate access to formal filing of a Request."
    - PS 1330.18 §542.16(a) provides that "[a]n inmate may…obtain assistance from outside sources, such as family members or attorneys[.]"
    - Since there is no public access to specific institutional BP-8 informal resolution forms, and staff refuse to provide the forms to incarcerated individuals for the purpose of assistance via outside sources, a rejection on this basis would severely limit access to formal filing of a Request and would therefore be a direct, unfair hindrance to my due process rights.

UNICOR FEDERAL PRISON INDUSTRIES, INC
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Cratty, Shane__    __43951-480__    _____    __USP Canaan__
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.      UNIT      INSTITUTION

**Part A- INMATE REQUEST**

I am Submitting this BP-9 without response to the BP-8 Attached hereto because this request Cannot be resolved at the Unit team Level.

This Correspondence is Submitted to the Warden of USP Canaan as a request for review and Corrective action regarding Mr. Shane Cratty's Current Classification Status.
      (See Continuation Pages)

_____        _____
         DATE                          SIGNATURE OF REQUESTER

**Part B- RESPONSE**

_____        _____
        DATE                      WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: _____

                                           CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____    _____    _____    _____
          LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.      UNIT      INSTITUTION

SUBJECT:

# ATTEMPT AT INFORMAL RESOLUTION
(Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". "The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*

\*+\*+\*+\*+\*+\*+\*+\*+\*+\*

To be completed by the Counselor:

Inmate's Name___ **Shane Cratty**___ Reg # __43951-480___ Date____ ____

Date and time given to inmate.___ ___ _____ ____   _____

\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*

To be completed by the Inmate:

1. Nature of Problem: This Correspondence is submitted to the Warden of USP Cannan as a request for review and corrective action regarding Mr. Shane Cratty's current classification status, management variable designation, First Step Act credit application, and delayed reentry preparation.

(SEE CONTINUATION PAGES)

2. State what action or resolution you expect.
(SEE CONTINUATION PAGES)

\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*

Counselor to check applicable section:

( ) Problem informally resolved on_____

( ) Problem not resolved. Continue formal procedure.
Explanation for Non-Resolution:

\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*+\*

Date: _____    Counselor's Signature: _____

Date: _____    Unit Manager's Signature: _____

Inmate's Signature:

SC439-02

Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

1

**This correspondence is submitted to the Warden of USP Cannan as a request for review and corrective action regarding Mr. Shane Cratty's current classification status, management variable designation, First Step Act credit application, and delayed reentry preparation.**

Dear Warden,  Mr. Cratty has been in continuous federal custody for several years and is now within the reentry window associated with his projected release date of March 15, 2027. During this period, he has experienced significant and ongoing mental health challenges that have substantially affected his institutional adjustment and overall functioning. These challenges were present at prior institutions and contributed to disciplinary issues that occurred while he was experiencing documented psychological distress, sleep disruption, and instability.

Rather than addressing these issues through stabilization, treatment, and reentry-oriented planning, prior institutions applied a management variable and approved an upward custody movement, resulting in Mr. Cratty's placement at a United States Penitentiary. This decision occurred during a period when Mr. Cratty's mental health symptoms were elevated and unresolved, and when reentry preparation should have been a central focus. As a result, reentry planning, First Step Act credit application, and transitional preparation were delayed or not initiated.

Mr. Cratty is not requesting further leniency or special treatment. He is requesting alignment with Bureau policy and law. At this stage of his sentence, additional punitive measures are not conducive to safety, rehabilitation, or institutional stability. What is needed is an opportunity for his mental health to stabilize in a less restrictive environment, coupled with structured reentry preparation consistent with policy.

Mr. Cratty's residence is in California. Placement closer to his release area would facilitate family contact and visitation with his parents, which is a recognized stabilizing factor for individuals with mental health conditions and is consistent with reentry goals. Increased family contact would help reduce distress, improve adjustment, and support a successful transition back into the community.

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-02

1



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

2

This request is made in the interest of allowing USP Canaan to review the current status independently and to correct decisions made at prior institutions that may no longer serve legitimate correctional or reentry purposes.

## Grounds for Relief / Requested Corrective Action

1. **Removal of Management Variable**
   Request review and removal of the management variable applied to Mr. Cratty, where the underlying disciplinary history is closely associated with periods of untreated or insufficiently treated mental health instability and no longer reflects his current correctional needs or reentry status.

2. **Application of First Step Act Credits**
   Request full review, calculation, and application of all earned First Step Act credits for which Mr. Cratty is eligible, consistent with statute and Bureau policy, and correction of any prior failures to apply or credit earned time.

3. **Immediate Initiation of Reentry Preparation**
   Request immediate initiation of Mr. Cratty's reentry packet, including case planning, assessment for transitional programming, and referral processes that should occur within the established reentry window preceding release.

4. **Transfer Consideration Within 500 Miles of Release Residence**
   Request consideration for placement at a facility within 500 miles of Mr. Cratty's California release residence, consistent with the First Step Act and reentry policy, to support family contact, medical continuity, and transitional planning.

5. **Halfway House / RRC Evaluation**
   Request a timely evaluation and recommendation for Residential Reentry Center placement and/or home confinement eligibility, as appropriate, based on applied FSA credits and proximity to release.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-02



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

3

This request is submitted with the intention of promoting institutional stability, rehabilitation, and successful reentry. Mr. Cratty seeks a forward-looking review that prioritizes treatment, preparation, and lawful transition rather than continued escalation. USP Canaan is respectfully requested to exercise its authority to correct, reverse, and realign prior decisions in accordance with Bureau policy and reentry objectives.

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [January/  /2026], _____,
28 U.S.C. § 1746.

In accordance with Program Statement 1330.018, §542.11 titled "RESPONSIBILITY" (a)(7)and (8), please return a response to this BP-8 remedy filing to the above listed person within **five working days**; when attached to a BP-9 please return a receipt within **five working days**.

This continuation page is for the attempt at informal resolution **only**. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-02

# ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". "The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

Inmate's Name___Shane Cratty_____ Reg #__43951-480____ Date_____ ____

Date and time given to inmate.___ _ _____ ___          _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Inmate:

1. Nature of Problem: This Correspondence is submitted to the Warden of USP Cannan as a request for review and corrective action regarding Mr. Shane Cratty's current classification status, management variable designation, First Step Act credit application, and delayed reentry preparation.

(SEE CONTINUATION PAGES)

2. State what action or resolution you expect.
(SEE CONTINUATION PAGES)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Counselor to check applicable section:

(  ) Problem informally resolved on_____

(  ) Problem not resolved. Continue formal procedure.
     Explanation for Non-Resolution:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Date: _____      Counselor's Signature: _____

Date: _____      Unit Manager's Signature: _ _____

                       Inmate's Signature:

SC 439 - 02



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

**This correspondence is submitted to the Warden of USP Cannan as a request for review and corrective action regarding Mr. Shane Cratty's current classification status, management variable designation, First Step Act credit application, and delayed reentry preparation.**

Dear Warden,  Mr. Cratty has been in continuous federal custody for several years and is now within the reentry window associated with his projected release date of March 15, 2027. During this period, he has experienced significant and ongoing mental health challenges that have substantially affected his institutional adjustment and overall functioning. These challenges were present at prior institutions and contributed to disciplinary issues that occurred while he was experiencing documented psychological distress, sleep disruption, and instability.

Rather than addressing these issues through stabilization, treatment, and reentry-oriented planning, prior institutions applied a management variable and approved an upward custody movement, resulting in Mr. Cratty's placement at a United States Penitentiary. This decision occurred during a period when Mr. Cratty's mental health symptoms were elevated and unresolved, and when reentry preparation should have been a central focus. As a result, reentry planning, First Step Act credit application, and transitional preparation were delayed or not initiated.

Mr. Cratty is not requesting further leniency or special treatment. He is requesting alignment with Bureau policy and law. At this stage of his sentence, additional punitive measures are not conducive to safety, rehabilitation, or institutional stability. What is needed is an opportunity for his mental health to stabilize in a less restrictive environment, coupled with structured reentry preparation consistent with policy.

Mr. Cratty's residence is in California. Placement closer to his release area would facilitate family contact and visitation with his parents, which is a recognized stabilizing factor for individuals with mental health conditions and is consistent with reentry goals. Increased family contact would help reduce distress, improve adjustment, and support a successful transition back into the community.

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 - 02



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

2

This request is made in the interest of allowing USP Canaan to review the current status independently and to correct decisions made at prior institutions that may no longer serve legitimate correctional or reentry purposes.

## Grounds for Relief / Requested Corrective Action

1. **Removal of Management Variable**
   Request review and removal of the management variable applied to Mr. Cratty, where the underlying disciplinary history is closely associated with periods of untreated or insufficiently treated mental health instability and no longer reflects his current correctional needs or reentry status.

2. **Application of First Step Act Credits**
   Request full review, calculation, and application of all earned First Step Act credits for which Mr. Cratty is eligible, consistent with statute and Bureau policy, and correction of any prior failures to apply or credit earned time.

3. **Immediate Initiation of Reentry Preparation**
   Request immediate initiation of Mr. Cratty's reentry packet, including case planning, assessment for transitional programming, and referral processes that should occur within the established reentry window preceding release.

4. **Transfer Consideration Within 500 Miles of Release Residence**
   Request consideration for placement at a facility within 500 miles of Mr. Cratty's California release residence, consistent with the First Step Act and reentry policy, to support family contact, medical continuity, and transitional planning.

5. **Halfway House / RRC Evaluation**
   Request a timely evaluation and recommendation for Residential Reentry Center placement and/or home confinement eligibility, as appropriate, based on applied FSA credits and proximity to release.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-02



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

This request is submitted with the intention of promoting institutional stability, rehabilitation, and successful reentry. Mr. Cratty seeks a forward-looking review that prioritizes treatment, preparation, and lawful transition rather than continued escalation. USP Canaan is respectfully requested to exercise its authority to correct, reverse, and realign prior decisions in accordance with Bureau policy and reentry objectives.

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [January/  /2026], _____,
28 U.S.C. § 1746.

In accordance with Program Statement 1330.018, §542.11 titled "RESPONSIBILITY" (a)(7)and (8), please return a response to this BP-8 remedy filing to the above listed person within **five working days**; when attached to a BP-9 please return a receipt within **five working days**.

This continuation page is for the attempt at informal resolution only. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 — 02

# ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". "The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**To be completed by the Counselor:**

Inmate's Name ___Shane Cratty___ . Reg # __43951-480__ . Date_____ ____

Date and time given to inmate._____ __ _____ ___           _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**To be completed by the Inmate:**

1. Nature of Problem: This Correspondence is submitted to the Warden of USP Cannan as a request for review and corrective action regarding Mr. Shane Cratty's current classification status, management variable designation, First Step Act credit application, and delayed reentry preparation.

 (SEE CONTINUATION PAGES)

2. State what action or resolution you expect.
 (SEE CONTINUATION PAGES)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**To be completed by the Counselor:**

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Counselor to check applicable section:

( ) Problem informally resolved on_____

( ) Problem not resolved. Continue formal procedure.
     Explanation for Non-Resolution:

_____
_____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Date: _____      Counselor's Signature: _____

Date: _____      Unit Manager's Signature: _ _____

            Inmate's Signature:

SC439-02

Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

1

**This correspondence is submitted to the Warden of USP Cannan as a request for review and corrective action regarding Mr. Shane Cratty's current classification status, management variable designation, First Step Act credit application, and delayed reentry preparation.**

Dear Warden,  Mr. Cratty has been in continuous federal custody for several years and is now within the reentry window associated with his projected release date of March 15, 2027. During this period, he has experienced significant and ongoing mental health challenges that have substantially affected his institutional adjustment and overall functioning. These challenges were present at prior institutions and contributed to disciplinary issues that occurred while he was experiencing documented psychological distress, sleep disruption, and instability.

Rather than addressing these issues through stabilization, treatment, and reentry-oriented planning, prior institutions applied a management variable and approved an upward custody movement, resulting in Mr. Cratty's placement at a United States Penitentiary. This decision occurred during a period when Mr. Cratty's mental health symptoms were elevated and unresolved, and when reentry preparation should have been a central focus. As a result, reentry planning, First Step Act credit application, and transitional preparation were delayed or not initiated.

Mr. Cratty is not requesting further leniency or special treatment. He is requesting alignment with Bureau policy and law. At this stage of his sentence, additional punitive measures are not conducive to safety, rehabilitation, or institutional stability. What is needed is an opportunity for his mental health to stabilize in a less restrictive environment, coupled with structured reentry preparation consistent with policy.

Mr. Cratty's residence is in California. Placement closer to his release area would facilitate family contact and visitation with his parents, which is a recognized stabilizing factor for individuals with mental health conditions and is consistent with reentry goals. Increased family contact would help reduce distress, improve adjustment, and support a successful transition back into the community.

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 -02

1



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

This request is made in the interest of allowing USP Canaan to review the current status independently and to correct decisions made at prior institutions that may no longer serve legitimate correctional or reentry purposes.

## Grounds for Relief / Requested Corrective Action

1. **Removal of Management Variable**
   Request review and removal of the management variable applied to Mr. Cratty, where the underlying disciplinary history is closely associated with periods of untreated or insufficiently treated mental health instability and no longer reflects his current correctional needs or reentry status.

2. **Application of First Step Act Credits**
   Request full review, calculation, and application of all earned First Step Act credits for which Mr. Cratty is eligible, consistent with statute and Bureau policy, and correction of any prior failures to apply or credit earned time.

3. **Immediate Initiation of Reentry Preparation**
   Request immediate initiation of Mr. Cratty's reentry packet, including case planning, assessment for transitional programming, and referral processes that should occur within the established reentry window preceding release.

4. **Transfer Consideration Within 500 Miles of Release Residence**
   Request consideration for placement at a facility within 500 miles of Mr. Cratty's California release residence, consistent with the First Step Act and reentry policy, to support family contact, medical continuity, and transitional planning.

5. **Halfway House / RRC Evaluation**
   Request a timely evaluation and recommendation for Residential Reentry Center placement and/or home confinement eligibility, as appropriate, based on applied FSA credits and proximity to release.

This continuation page is for the attempt at informal resolution **only**. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439 – 02



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

3

This request is submitted with the intention of promoting institutional stability, rehabilitation, and successful reentry. Mr. Cratty seeks a forward-looking review that prioritizes treatment, preparation, and lawful transition rather than continued escalation. USP Canaan is respectfully requested to exercise its authority to correct, reverse, and realign prior decisions in accordance with Bureau policy and reentry objectives.

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [January/  /2026], _____,
28 U.S.C. § 1746.

In accordance with Program Statement 1330.018, §542.11 titled "RESPONSIBILITY" (a)(7)and (8), please return a response to this BP-8 remedy filing to the above listed person within **five working days**; when attached to a BP-9 please return a receipt within **five working days**.

This continuation page is for the attempt at informal resolution **only**. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439- 02

# ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". "The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

Inmate's Name_____ **Shane Cratty**_____ Reg #__ **43951-480**_____ Date_____ ____

Date and time given to inmate.____ _ _____ ___       _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Inmate:

1. Nature of Problem: This Correspondence is submitted to the Warden of USP Cannan as a request for review and corrective action regarding Mr. Shane Cratty's current classification status, management variable designation, First Step Act credit application, and delayed reentry preparation.

__(SEE CONTINUATION PAGES)__

2. State what action or resolution you expect.
   (SEE CONTINUATION PAGES)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Counselor to check applicable section:

( ) Problem informally resolved on_____

( ) Problem not resolved. Continue formal procedure.
    Explanation for Non-Resolution:

_____
_____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Date: _____   Counselor's Signature: _____

Date: _____   Unit Manager's Signature: _ _____

                     Inmate's Signature:

SC439-02



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David @ The Remedy Project

1

**This correspondence is submitted to the Warden of USP Cannan as a request for review and corrective action regarding Mr. Shane Cratty's current classification status, management variable designation, First Step Act credit application, and delayed reentry preparation.**

Dear Warden,  Mr. Cratty has been in continuous federal custody for several years and is now within the reentry window associated with his projected release date of March 15, 2027. During this period, he has experienced significant and ongoing mental health challenges that have substantially affected his institutional adjustment and overall functioning. These challenges were present at prior institutions and contributed to disciplinary issues that occurred while he was experiencing documented psychological distress, sleep disruption, and instability.

Rather than addressing these issues through stabilization, treatment, and reentry-oriented planning, prior institutions applied a management variable and approved an upward custody movement, resulting in Mr. Cratty's placement at a United States Penitentiary. This decision occurred during a period when Mr. Cratty's mental health symptoms were elevated and unresolved, and when reentry preparation should have been a central focus. As a result, reentry planning, First Step Act credit application, and transitional preparation were delayed or not initiated.

Mr. Cratty is not requesting further leniency or special treatment. He is requesting alignment with Bureau policy and law. At this stage of his sentence, additional punitive measures are not conducive to safety, rehabilitation, or institutional stability. What is needed is an opportunity for his mental health to stabilize in a less restrictive environment, coupled with structured reentry preparation consistent with policy.

Mr. Cratty's residence is in California. Placement closer to his release area would facilitate family contact and visitation with his parents, which is a recognized stabilizing factor for individuals with mental health conditions and is consistent with reentry goals. Increased family contact would help reduce distress, improve adjustment, and support a successful transition back into the community.

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - O2



Name: Shane Cratty    Reg. No. 43951-480
Assisted by David @ The Remedy Project

2

This request is made in the interest of allowing USP Canaan to review the current status independently and to correct decisions made at prior institutions that may no longer serve legitimate correctional or reentry purposes.

## Grounds for Relief / Requested Corrective Action

1. **Removal of Management Variable**
   Request review and removal of the management variable applied to Mr. Cratty, where the underlying disciplinary history is closely associated with periods of untreated or insufficiently treated mental health instability and no longer reflects his current correctional needs or reentry status.

2. **Application of First Step Act Credits**
   Request full review, calculation, and application of all earned First Step Act credits for which Mr. Cratty is eligible, consistent with statute and Bureau policy, and correction of any prior failures to apply or credit earned time.

3. **Immediate Initiation of Reentry Preparation**
   Request immediate initiation of Mr. Cratty's reentry packet, including case planning, assessment for transitional programming, and referral processes that should occur within the established reentry window preceding release.

4. **Transfer Consideration Within 500 Miles of Release Residence**
   Request consideration for placement at a facility within 500 miles of Mr. Cratty's California release residence, consistent with the First Step Act and reentry policy, to support family contact, medical continuity, and transitional planning.

5. **Halfway House / RRC Evaluation**
   Request a timely evaluation and recommendation for Residential Reentry Center placement and/or home confinement eligibility, as appropriate, based on applied FSA credits and proximity to release.

This continuation page is for the attempt at informal resolution **only**. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.
TRP CODE: SC439-02



Name: Shane Cratty   Reg. No. 43951-480
Assisted by David @ The Remedy Project

3

This request is submitted with the intention of promoting institutional stability, rehabilitation, and successful reentry. Mr. Cratty seeks a forward-looking review that prioritizes treatment, preparation, and lawful transition rather than continued escalation. USP Canaan is respectfully requested to exercise its authority to correct, reverse, and realign prior decisions in accordance with Bureau policy and reentry objectives.

I, Shane Cratty, hereby certify under penalty of perjury that the facts herein are TRUE and CORRECT to the best of my recollection;

Executed on [January/  /2026], _____,
28 U.S.C. § 1746.

In accordance with Program Statement 1330.018, §542.11 titled "RESPONSIBILITY" (a)(7)and (8), please return a response to this BP-8 remedy filing to the above listed person within **five working days**; when attached to a BP-9 please return a receipt within **five working days**.

This continuation page is for the attempt at informal resolution <u>only</u>. The number of continuation pages for informal resolution attempts is unregulated, as per PS 1330.18 §542.13(a). This page shall not be construed as a continuation page for any higher-level filing, including when attached as a reference for such a filing.

TRP CODE: SC439 - 02

# Exhibit B

Email and Written Correspondence Between

Shane Cratty, His Parents and/or Outside

Advocate

# David Simpson

| | |
|---|---|
| **From:** | CRATTY SHANE (43951480) |
| **Sent Date:** | Wednesday, March 4, 2026 10:05 AM |
| **To:** | criminaljusticerealm@gmail.com |
| **Subject:** | RE: Important  Send These Back Immediately |

I'm not going to lie, these peoples tactics and the lockdowns and everything are totally overwhelming me. IDK what to do with the bp-8s the counselor signed and attached a memo too since I can't make copies of anything due to lockdowns, modified operations, etc.

I'm about to just send everything I have to you and be done with everything. I honestly think about killing myself every day and the more time that goes on the worse it gets. The longr I'm here the higher chance I have of getting into a violent altercation that I can't do anything about and then they will use that to make it seem like I'm so violent and dangerous, when the truth is I don't want to hurt anyone and these people are just demonizing me for whatever reason. they took the rejection notice and the cover letter I signed and dated to the warden and just wrote like I said on the post it note. Like I said, making copies - almost impossible. I'm so sick of this shit, these people and this place. It doesn't seem like anything is happening and my mental state is only getting worse. I'm honestly probably going to try and kill myself in a few weeks if nothing happens just so I don't have to deal with the stress and degredation these people are putting me through. I'm going to send everything off including my bp-10 DHO appeals (turned in 8/15/25) the notices for extension for time of response for those appeals. My lawyers contacted the mid-atlantic regional office and their representative told them that "due to the government shutdown it might take an unspecified amount of months for a response since they're so far behind". My lawyers would swear to that under penalty of perjury, which is why I've waited so long for a response and never did the bp-11's. Can you please help me with that. I also put in any documentation I have regarding all rejection notices I've received and everything else I have. I'm sorry if it's unorganized but I can't think at all anymore.

# David Simpson

| | |
|---|---|
| **From:** | criminaljusticerealm@gmail.com |
| **Sent Date:** | Wednesday, March 4, 2026 12:15 PM |
| **To:** | SHANE CRATTY (43951480) |
| **Subject:** | RE: Important   Send These Back Immediately |

Shane,

I'm going to adjust how I say this because I understand something important:

You don't feel valued in there. You feel treated like your life has no worth. And when a person is placed in an environment that constantly signals that they don't matter, it can start to feel true.

But the way they treat you is not a measurement of your value.

I know staff operate as if you are disposable. I know the system behaves as if you are a file, a number, a body to warehouse. That does not mean your life has no value. It means you are inside a broken environment.

Your parents value you.
I value you.
The students at The Remedy Project, who are about to intensify your advocacy, value you.
There are people who know your name and are fighting for it.

Your life is not small. It is being fought for.

I also want to acknowledge something else clearly: your concern about violence is not irrational. The environment you're in is volatile. You are surrounded by men who are unstable, traumatized, medicated improperly, or who have given up. That is real. You are under constant pressure. Your nervous system is on high alert because it has to be.

So this is not about pretending you're safe.
This is about surviving intelligently.

Your job right now is preservation. Maintain your peace as best you can. Stay neutral. Stay low-profile. Avoid ego, avoid pride battles, avoid arguments. Protect your energy. The goal is not to win inside that unit; the goal is to get through it intact while we continue applying pressure from the outside.

And pressure is being applied.

It feels slow to you because you're inside the clock.
But things are moving.
Documents are building.
Obstruction is being recorded.
Escalation is happening.

I need you to give us time.

Do not think about ending your life.
Think about the day you walk out having survived something designed to break you.
Think about how powerful that victory will be.
Think about the fact that you endured a system that tried to erase you and failed.

But I'm also going to say something serious: if the suicidal thoughts are getting louder or feel like they might turn into action, you must tell a psychologist or medical staff immediately. I understand you may not trust them. I understand that. But your safety matters more than distrust. If you need to request crisis support, do it. If you need to say plainly, "I am not okay," do it. Staying alive is not surrender; it is strategy.

You are not weak for feeling overwhelmed.

# David Simpson

You are exhausted.
There's a difference.

Send the packet.
Let me carry the structure.
You focus on survival.

We are still fighting.
And I am asking you — give us time.
David Z Simpson

# David Simpson

| **From:** | criminaljusticerealm@gmail.com |
|---|---|
| **Sent Date:** | Wednesday, February 18, 2026 11:00 PM |
| **To:** | SHANE CRATTY (43951480) |
| **Subject:** | RE: Remedy issues - Do Not Escalate Emotionally — We Escalate Strategically |

Shane,

First — stop.

Take a breath before you read the rest of this.

What you are describing is obstruction. You are not crazy. You are not imagining it. And you are absolutely correct that they are creating procedural barriers to prevent your filings from gaining legitimacy and traction.

But I need you steady.

When you say you're almost ready to "take matters into your own hands," that tells me the frustration is peaking. That is exactly what they want. They want you exhausted, emotional, and impulsive. That is how they win.

You are not going to give them that.

Now let's talk strategy.

You are correct:

There is no policy that allows them to reject a BP-8 simply because it is not printed on that specific institution's preferred form.

Institutional preference is not regulatory authority.

They cannot block informal resolution on that basis.

You are also correct that they are using the "no BP-8 response" excuse while simultaneously obstructing your ability to submit a BP-8.

That is a circular trap. And it is deliberate.

At this point, we stop trying to win at their level.

Do not keep attempting to hand the same remedies back to the same people who are blocking you. That just keeps you on the merry-go-round.

Here is what I want you to do:

Gather all three rejected BP-9 packets.

Include all rejection notices.

Include the signed resubmission letter we prepared.

Include any notes you have about dates, lockdowns, staff names, and statements made.

Mail the entire packet back to me as legal mail, and certified if possible.

Yes, I want the physical packets back.

We now have clear evidence of procedural obstruction. That changes posture. I can escalate this outside of that

unit. I can send it up the chain. I can attach sworn obstruction documentation. I can involve regional oversight in a way that you cannot from inside the unit.

Do not worry about making copies if you can't. Just send the originals. I will let your parents know what's happening so they can ensure you have funds to send it certified and trackable. We are not going to let this "disappear."

You are not powerless. You are just trying to fight a unit-level battle with tools that are now compromised.

We escalate.

Now let me address something else clearly:

You do not take matters into your own hands.
You do not act out.
You do not give them a disciplinary write-up.
You do not give them justification to label you unstable or violent.

Everything you are describing: medication interruption, broken sanitation, lockdown obstruction, is building a record. That record matters. But only if you stay disciplined.

You are not crazy for feeling like there is no justice. The system feels that way when you are inside it. But justice is not instant in the USA. It is built. And right now, we are building it.

You are not alone in this anymore.

Send the packets back.
Stay calm.
Let me escalate this properly.

And write me back once you've secured the envelope so I know the plan is in motion.

We move strategically — not emotionally.

— David

 CorrLinks

Mailbox ⌄    Account Management ⌄

 **Mailbox >**

**Inbox Message**

From

SHANE CRATTY (43951480)

Date

1/13/2026 8:34:32 AM

Subject

RE: I spoke with your Lawyers today.

Message

David,

Thank you for your help. I just got the legal mail today with all the remedies, etc. They removed all the post it notes so I don't know if there were any instructions on them. please tell me what to do with the certification of identity forms and where to send them as well as any other information I need. I'm going to turn in the bp-9s to the counselor as son as I see him. Everything seems well written and well put together, I haven't finished reading everything, but it seems legit so far. Look forward to hearing from you soon and hopefully seeing some results.

Sincerely,

Shane

Guidance to REMOVE yourself from this specific person in custody's contact list or REFUSE all federal person in custody's requests for message exchanges is provided within CorrLinks.

By utilizing CorrLinks to send or receive messages you consent to have Bureau of Prisons staff monitor the informational content of all electronic messages exchanged and to comply with all Program rules and procedures.

Your messages may not exceed 13,000 characters and no attachments will be accepted.

For additional information related to the program, please visit the https://www.bop.gov/inmates/trulincs.jsp

Personal:(929) 228-4102 | Work: (302) 217-8387
Co-Director of The Remedy Project

---

**ick Cratty** <rcratty@pacbell.net>
i: David Simpson <criminaljusticerealm@gmail.com>
c: Jill Nussinow <theveggiequeen@gmail.com>
<span style="float:right">Wed, Feb 25, 2026 at 7:08 F</span>

Forwarded to Shane just now. Thank you David.

[Quoted text hidden]

---

**ick Cratty** <rcratty@pacbell.net>
i: David Simpson <criminaljusticerealm@gmail.com>
c: Jill Nussinow <theveggiequeen@gmail.com>
<span style="float:right">Fri, Mar 6, 2026 at 3:35 F</span>

Hello- More desperation and trauma from Shane written below-
We received this Wednesday and while we are aware things move slowly, this is soon getting beyond what we handle financially, trying to keep him alive by paying protection money- as I wrote- desperation

---

Well we finally got off lockdown, so I can write you a full message. I've been super depressed and having horrible anxiety from being locked down and not being able to mail anything out. I've got to get out of here I just saw 2 guys get stabbed by my homies for trying to get crazy about the phone or something while the 3rd guy who really started it all ran away. One guy had to get taken to an outside hospital and almost died, the other one got stabbed in the stomach and got his head stomped . So they just took 5 people out of here into the shu since the 6th one is still in the hospital. And I would've had to get in it except I was in my cell luckily and it happened too fast. I need to call you later seriously because this is fucked up and I'm in a fucked up situation. I know you said there's no more money, but in order to leave here soon like in a week I need 2000 dollars and I need to leave or I'm going to be in a situation in a couple weeks and I could end up hurt or with more time there's no telling with this kind of stuff since there's people willing to lose their life over phone calls and 5 dollars and shit like that since they have life sentences and can't ever get their points down to even get to a FCI medium. So please for the love of God do this so I can get up out of here, this shit isn't gonna work it's going to end bad if I don't get everything squared away and get out of here. The truth is I owe my homie all that money and I was trying to figure a way to pay it without having to ask you and I kept paying it partially down but it seems like it just went right back up. I can't just leave without paying what he says I owe, but if I clear the whole thing and leave then they can't say anything. I've got to leave and do it the right way, I can't do it otherwise because even if I don't owe that much if he tells people wherever I go I owed him it could be just as bad for me. I'm trying to handle shit the right way, it's so hard. I honestly thinka bout trying to get a bottle of white lightning and taking as many pills as I can get. This shit is so stressful and I'm traumatized and I can't think straight and these counselors are doing nothing to help me and we're always locked down. The chaplain came to see me last friday about kosher meals and I still haven't got them. I don't know what to do, but this shit isn't working here at all and I can't go out, I've got to pay my homie it's my word and then I can leave. You have to try and understand I can't explain everything right now, some day I'll be able to, the way I can explain this shit to a jury I'm going to get millions. Please just help me get out of here the right way. I need to send Simpson the stuff and the signed declaration page to mary and then I can go, I need to try to get it done before the next lockdown because it's the lockdowns that are killing me. I'm seriously so tired I'm ready to die. I would've already done it if you both didn't want me to get out, I wouldn't have cared, I would've done it a long time ago, so if you really want me to get out of here and not having to keep going through this shit please do this so I can leave here, please.

[Quoted text hidden]

---

**avid Simpson** <criminaljusticerealm@gmail.com>
i: tcjr.educational.productions@gmail.com
<span style="float:right">Sat, Mar 7, 2026 at 4:12 F</span>

[Quoted text hidden]

---

**avid Simpson** <criminaljusticerealm@gmail.com>
i: Rick Cratty <rcratty@pacbell.net>
.. Jill Nussinow <theveggiequeen@gmail.com>
<span style="float:right">Sat, Mar 7, 2026 at 5:34 F</span>

Rick and Jill, I understand why this message is alarming and exhausting to receive. What Shane is describing is unfortunately consistent with the kind of environment he is currently housed in, volatile, unpredictable, and compounded by repeated lockdowns that restrict communication and increase psychological pressure. Right now, the most important priority is stabilizing the situation and keeping him focused on mailing the documents so we can escalate matters outside the institution. Once I receive the packet he is sending, I will be in a much stronger position to move forward with the next steps. I know this process feels painfully slow, but we are still actively building the record needed to intervene. For now, the best thing we can do is keep him focused on staying safe and getting those materials out.

[Quoted text hidden]

---

**ick Cratty** <rcratty@pacbell.net>
ı: David Simpson <criminaljusticerealm@gmail.com>
ɔ: Jill Nussinow <theveggiequeen@gmail.com>

Sat, Mar 7, 2026 at 6:02 F

We have encouraged him to send you the documents. I think that the inconsistency of the lockdowns derails him. Every time that he thinks that he can do it, he gets locked down. He seems to be doing what he can to stay safe but it sounds quite challenging.

When we next hear from him, we will ask about his sending the documents.

Thank you,
Jill and Rick

[Quoted text hidden]

 
## lessage just received from Shane

messages

ick Cratty <rcratty@pacbell.net>
ı: David Simpson <criminaljusticerealm@gmail.com>

Wed, Feb 25, 2026 at 4:50 F

Hello David- Just got this email

Thank you. Can you tell Dr Simpson 2 things: one, I got something from the regional offivce that had all remedies copied. two, they just returned the bp-9 without the cover letter and wrote on a post-it note that they had already responded which they didn'ty they rejected it the 1st time. Love you.

avid Simpson <criminaljusticerealm@gmail.com>
ı: Rick Cratty <rcratty@pacbell.net>

Wed, Feb 25, 2026 at 6:57 F

Shane,

This is important.

First — the BP-9 they returned to you with the post-it note stating they "already responded" (when in fact they only rejected it the first time): I need that entire packet back immediately.

Please do the following:

1. Make a copy of the post-it note attached to the front page.

2. Keep those copies for your records.

3. Place the original BP-9 packet, with the original post-it attached, into a manila envelope.

4. Send it to me via certified legal mail to the same attorney address I have used to correspond with you.

5. Send mail to: The Remedy Project - Alexander Brooks, Esq - Attorney at Law - C/O Dr. David Z Simpson - 40 Rector St., New York, NY 10006

Do not alter it. Do not remove the post-it. Send it exactly as they gave it back to you.

Now regarding the regional office packet:

If the region sent you any correspondence, response letter, memo, notation, or cover sheet — anything showing they addressed what was submitted — I need that as well.

Please:

- Make a copy for yourself if possible.

- Send me the regional correspondence immediately, certified legal mail if you can.

I do not need copies of what we originally sent unsigned. What I need are:

- The BP-9 they just returned to you.

- The post-it note.

- Any written correspondence from the regional office.

Once mailed, email and let us know it has been sent so we can watch for it.

This documentation is critical.

— David

[Quoted text hidden]

--
**Dr. David Z. Simpson, h.c. (he/him)**

 
## hane Cratty 43951480
messages

ick Cratty <rcratty@pacbell.net>
ı: David Simpson <criminaljusticerealm@gmail.com>
ɔ: Chaim Kudan <ckudan@aleph-institute.org>

Mon, Feb 23, 2026 at 5:35 F

My Desperation is increasing. Please tell me what to do.
Attorneys submitted compassionate release and supporting motion but nothing has happened and I don't know if shane is alive or dead with no communications for a week now.

I had hoped that there would be movement or changes to Shane's status but there has been none that I can ascertain.
R

avid Simpson <criminaljusticerealm@gmail.com>
ı: Rick Cratty <rcratty@pacbell.net>
ɔ: Chaim Kudan <ckudan@aleph-institute.org>

Mon, Feb 23, 2026 at 6:08 F

Rick,

I understand the desperation in your message. The silence is terrifying, especially when you're already living in a state of constant fear for your son. But I need you to hear this clearly: the last communications I have received from Shane show that he is actively responding, actively filing, and actively doing exactly what I have asked of him. That is not the behavior of someone who has given up. That is the behavior of someone who is fighting.

I have forwarded you the communications between him and me so you can see for yourself that he is engaged and pushing forward. That is a very good sign.

The lack of communication over the last week is almost certainly tied to lockdown conditions. When institutions see that an incarcerated person has real, organized, effective outside assistance, communication often becomes slower and more restricted. That is not uncommon. It is frustrating, and it feels cruel, but it is often a tactic to slow momentum, not evidence of catastrophe. Please do not let the silence immediately take you to the worst-case scenario.

The compassionate release motion has been filed. Courts do not move quickly, especially not on these matters. Silence from the court does not mean inactivity; it means it is in process.

What I need from you right now is steadiness. Shane is holding firm inside. You must hold firm outside. If you allow the fear to consume you, it weakens everyone. Your strength matters more than you realize.

I also want you to know that I am preparing to move forward with additional legal action. If necessary, I intend to draft and attempt to file an injunction motion myself, pro se on Shane's behalf, addressing the ongoing conditions and obstruction that are occurring. I will not sit idle if the situation requires escalation.

Please breathe. The fight is still active. He is still engaged. And I am still here pushing.

We move with discipline, not panic.

David

[Quoted text hidden]

--
**Dr. David Z. Simpson, h.c. (he/him)**
Director of The Criminal Justice Realm
E-Card | TCJR Productions | LinkedIn
Personal:(929) 228-4102 | Work: (302) 217-8387
Co-Director of The Remedy Project

ick Cratty <rcratty@pacbell.net>
ı: David Simpson <criminaljusticerealm@gmail.com>

Tue, Feb 24, 2026 at 4:05 F

Thank you for your continued support for Shane and Jill and I.

This system, this incarceration and injustice system, is diabolical and sinister. My anger is exponentially increasing with each day. I will attempt to talk myself off this ledge.

Thank you for doing what you are able.

I am messaging the Rabbi Kudan directly, hoping he at least can advocate for Shanes religious freedom of a Kosher diet he requested long ago and being able to participate in passover services which they have denied him.

Signed ,
Rick

[Quoted text hidden]

---

**avid Simpson** <criminaljusticerealm@gmail.com>
ı: tcjr.educational.productions@gmail.com

Sat, Mar 7, 2026 at 4:18 F

[Quoted text hidden]

 

## lessage from Shane today
messages

ick Cratty <rcratty@pacbell.net>                                     Wed, Feb 18, 2026 at 7:06 F
ı: David Simpson <criminaljusticerealm@gmail.com>

Here is what he wrote: Obviously feeling frustrated.
had a call with Mary, but I honestly don't think anything is going to happen. I tried to turn in the remedies again and the counselor basically said they're going to just reject them again I said oh well turn them in anyway. IDK what to do they just fucking do whatever they want with no regard for the rules that they made to govern themselves, yet I'm expected to follow the bullshit rules they made for me and even when I do they still fuck with me.

At least Shane followed through.

If you have any advice for him, please let us know.
Rick and Jill

---

avid Simpson <criminaljusticerealm@gmail.com>                       Thu, Feb 19, 2026 at 12:13 A
ı: Rick Cratty <rcratty@pacbell.net>

Rick and Jill,

I wanted to let you know that Shane did reach out to me regarding the continued obstruction he is experiencing with his administrative remedies. I have responded and provided him with clear guidance on how we are going to handle this strategically moving forward.

For your review and awareness, I am attaching copies of the guidance I provided to him so you can see exactly what direction we are taking.

At this stage, I have instructed Shane to gather all rejected BP-9 packets, the rejection notices, and the accompanying resubmission materials and mail the entire packet back to me so I can escalate the matter outside of the unit level. We now have enough evidence of procedural obstruction that it makes sense for me to handle this directly from here.

To do that properly, he will need sufficient funds to send the materials back via certified legal mail so we can track it and ensure nothing "disappears." I believe that a minimum of **$20** should be sufficient to cover certified postage and ensure proper tracking.

Please make sure he has the funds available to do this as soon as possible. Once mailed, I will be watching for it and will immediately move to the next level of escalation.

Thank you both for staying steady through this. We are not reacting emotionally — we are escalating strategically.

I will keep you updated as soon as the packet is received.

David

[Quoted text hidden]

--
**Dr. David Z. Simpson, h.c. (he/him)**
Director of The Criminal Justice Realm
E-Card | TCJR Productions | LinkedIn
Personal:(929) 228-4102 | Work: (302) 217-8387
Co-Director of The Remedy Project

**2 attachments**

**Sent Message to Shane 02 19 26.pdf**
69K

**CorrLinks - Inbox Message 02 18 26.pdf**
64K

 

## ust heard from Shane for the first time since last Tuesday

messages

**ick Cratty** <rcratty@pacbell.net>                                                           Wed, Feb 4, 2026 at 2:38 F
ı: David Simpson <criminaljusticerealm@gmail.com>

Here is what he wrote:

Hey we just got off lockdown. I got the remedies back all rejected on 1/28 or 1/29, I was so overwhelmed I forgot to have the counselor sign and date it because the remedies all say 1/27 as the date received. Regardlss they were all rejected, heres the info to send to Simpson because I need to know what to do asap.

BP 8/9 submittal (SC439-01) Assigned remedy Id #1266269-F1
reject reason 1: You did not attempt informal resolution prior to submission of administrative remedy, or you did not provide the necessary evidence of your attempt at informal resolution
reject reason 2: you must provide more specific information about your request/appeal so that it may be considered
reject reason 3: you did not submit the correct number of continuation pages with your request/appeak. 2-warden's level (highlighted); 3-regional level; 4- central office level. the cited number includes your original
reject reason 4: see remarks
remarks: only one issue per remedy

BP 8/9 submittal (SC439-02) Assigned remedy Id #1266266-F1
Reject reason 1: you did not attempt informal resolution prior to submission of the administrative remedy, or you did not provide the necessary evidence of your attempt at informal resolution

BP 8/9 submittal (SC439-03) Assigned remedy ID#1266268-F1
Reject reason 1: You did not attempt informal resolution prior to submission of administrative remedy, or you did not provide the necessary evidence of attempt at informal resolution
Reject reason 2: see remarks
Remarks: only one issue per remedy

Obviously all these issues were already explained on the cover sheet and this is just an attempt to slow everything down and I don't know what to do. THe warden never issued a memo about the lockdown so I'm not sure how to go about getting proof we were locked down as I only have 5 calendar days to resubmit the remedy.
Also I'm going to try and call later please let me know when I can.

Shane said that he would try to call us later and truly wants direction on what to do. I think that he is a bit frantic due to the time frame and having been locked down.

Any advice is appreciated,
Jill and Rick

---

**avid Simpson** <criminaljusticerealm@gmail.com>                                              Thu, Feb 5, 2026 at 3:49 F
ı: Rick Cratty <rcratty@pacbell.net>

Stay Calm, Shane – We Can Fix This (Immediate Steps Below)

Shane,

Take a breath. I know this feels frantic because of the timing and the lockdown, but **this is fixable**, and what you're describing is a very common obstruction tactic. You did the right thing by sending me the rejection language immediately.

Here is what I want you to do **right now**, step by step.

### FIRST – Focus on Remedies #2 and #3

This applies to the **medical remedy** and the **reentry/transfer remedy**.

2. Submit that BP-8 **directly to your unit counselor or unit manager ASAP**.

3. When you submit it, clearly state that you are requesting **informal resolution** and that the matter is urgent.

4. You should **demand a response within 5–7 business days**. That is reasonable and standard.

This step is important because, even though it slows things down, it **removes the exact procedural block they are using against you** ("no informal resolution attempted"). Once staff responds (or fails to respond), we can attach that BP-8 and their response back onto the BP-9 and resubmit cleanly.

## SECOND – What Happens Next

Once you get:

- a written response, **or**
- no response within a reasonable time,

You will then:

1. Attach the BP-8 **and** the staff response (or note the lack of response),

2. Add **four copies** of that BP-8 packet,

3. Re-submit the BP-9 to go to the warden.

That cures their rejection and puts the burden back on them.

## WHY WE'RE DOING IT THIS WAY

You are correct that the seriousness of your situation makes prolonged informal resolution inappropriate. However, because they are deliberately using procedure to stall you, **we take the procedural win first**. This forces the issue onto the record and prevents them from stonewalling you indefinitely.

## IMPORTANT

The priority right now is keeping these remedies alive and moving.

You are not doing this wrong. They are trying to exhaust you. Don't let them.
Follow the steps above, keep me updated, and we will keep pushing forward.

You're not alone in this.

—David
[Quoted text hidden]
--
**Dr. David Z. Simpson, h.c. (he/him)**
Director of The Criminal Justice Realm
E-Card | TCJR Productions | LinkedIn
Personal:(929) 228-4102 | Work: (302) 217-8387
Co-Director of The Remedy Project

---

**avid Simpson** <criminaljusticerealm@gmail.com>                    Thu, Feb 5, 2026 at 4:47 F
ı: Rick Cratty <rcratty@pacbell.net>

How to Resubmit Remedy #1 – Follow These Steps Exactly
Shane,

Below are your step-by-step instructions for resubmitting Remedy #1 (conditions of confinement / civil rights). Please read this carefully and follow it exactly. This will protect your record and preserve your rights.

HOW TO CREATE THE RESUBMITTAL

You have two options, and either one is acceptable:

Option 1: Print this email and use the resubmittal letter section I provided (the cover letter language). You may cross out or cut off anything extra and use only the resubmittal language as your cover letter.

Option 2: Re-copy the resubmittal language by hand or type it onto a clean piece of paper and use that as your resubmittal letter.

## WHAT TO ASSEMBLE (IN THIS ORDER)

Resubmittal letter (the cover letter we drafted)

The rejection notice you received

The BP-9 packet for Remedy #1, including:

The BP-9 form

The BP-8 and all its continuation pages

All attachments that support this remedy

Before submitting: Keep a copy of the resubmission letter and rejection notice for your personal file. Keep one copy to send to me (or your parents) for our records.

Once assembled, resubmit the packet immediately to your Unit Counselor, Unit Manager, or the staff member who took it from you the first time.

Do not sit on it. Filing it is what preserves your leverage.

## VERY IMPORTANT – IF STAFF REFUSES IT

If any staff member refuses to accept the resubmission or rejects it again improperly:

Write a signed sworn statement immediately stating:

Date and time

Name and title of the staff member

What you attempted to submit

That they refused to accept it

Attach that sworn statement to the packet.

Send of everything (including the sworn statement and any new rejection notice) to me as soon as possible as legal mail using the original address I provided.

At that point, I will escalate this to the next level (Regional Office) and address it as obstruction and denial of access.

## AFTER SUBMISSION

If it is accepted, notify me immediately.

If it is rejected again, keep a copy and notify me immediately.

Do not guess your next move — I will guide you step by step.

You didn't miss anything substantive. This is a procedural obstruction, and we are handling it the right way. Stay calm, move deliberately, and keep me informed.

You're doing exactly what you're supposed to be doing.

—David


Cover Letter for Resubmission – Remedy #1 (Conditions of Confinement / Civil Rights)

To The Warden's Office/ARC,

This letter accompanies the resubmission of Administrative Remedy, Remedy ID #1266269-F1, which was rejected on procedural grounds that are factually and legally incorrect.

First, this remedy raises one claim only: a violation of my Eighth Amendment right to be free from cruel and unusual punishment. All facts described in the submission, including staff abuse, sexual misconduct, denial of medical care, retaliation, and unsafe conditions, are evidence supporting that single claim, not separate or unrelated issues. Characterizing supporting facts as "multiple issues" is a misreading of the submission and an improper basis for rejection.

allegations and other conduct governed by the Prison Litigation Reform Act (PLRA), all raised as part of a single conditions-of-confinement claim under the Eighth Amendment. Where allegations of sexual abuse or sexual misconduct by staff are raised, PLRA-related standards and protections take precedence, and such claims are expressly recognized as inappropriate for informal resolution. These matters cannot be remedied through casual discussion with staff and require formal review and preservation on the record.

Bureau of Prisons policy grants the Warden discretion to determine when informal resolution is not appropriate and to accept remedies directly where allegations involve staff abuse, sexual misconduct, or other serious constitutional violations. The rejection of this remedy for failure to attempt informal resolution ignores the nature of the allegations, misapplies policy, and operates to improperly obstruct review of claims that must be formally addressed. Under these circumstances, requiring informal resolution is futile, unreasonable, and inconsistent with both BOP policy and the purposes of the PLRA. Rejecting this filing on that basis serves only to delay review and interfere with my right to seek administrative and judicial relief for serious civil rights violations.

Third, the rejection citing an incorrect number of continuation pages is improper. Policy governing continuation pages applies to BP-9, BP-10, and BP-11 submissions, not to informal resolution requests. Conflating continuation-page requirements for formal remedies with informal resolution paperwork is a clear misapplication of policy and should not be used as a basis for rejection.

For these reasons, the stated grounds for rejection are unfounded. I respectfully request that staff cease and desist from wrongful procedural denials, accept this remedy for proper review, and allow it to proceed on the merits. Continued rejection under misapplied procedural rules serves only to obstruct the administrative process and interfere with my right to seek redress for constitutional violations.

This remedy is resubmitted in good faith and in accordance with applicable policy.

Respectfully,

Shane Cratty
Register No. 43951-480
Date: _____
[Quoted text hidden]

---

**ck Cratty** <rcratty@pacbell.net>                                          Thu, Feb 5, 2026 at 6:23 F
ı: David Simpson <criminaljusticerealm@gmail.com>

Sent to Shane. It seems like they might be on lockdown again but he now has all of it.

We will be hopeful that he can get it done.
Rick and Jill
[Quoted text hidden]

---

**avid Simpson** <criminaljusticerealm@gmail.com>                            Thu, Feb 5, 2026 at 6:51 F
ı: Rick Cratty <rcratty@pacbell.net>

I sent it to him also. He seems to prefer communicating with you guys. No problem. We are doing great together.

**Dr. David Z. Simpson, h.c. (he/him)**
Director of The Criminal Justice Realm
E-Card | TCJR Productions | LinkedIn
Personal:(929) 228-4102 | Work: (302) 217-8387
Co-Director of The Remedy Project
[Quoted text hidden]

 
## orrlinks we just received from Shane
messages

ick Cratty <rcratty@pacbell.net>
ı: David Simpson <criminaljusticerealm@gmail.com>                    Sun, Jan 11, 2026 at 8:17 F

Yeah, the issue is you don't understand what I'm going through here and the poor caliber of people I have to deal with and how unscrupulous they are and they literally have nothing to lose. You can literally hear people cutting slabs of metal and smashing them out of their bunks and lockers and sharpening them at all fucking hours. I don't want to have to have a fucking knife and get caught and lose 41 more days, I don't want to get into an argument with someone or something like that and either get stabbed (which I know from experience sucks ass) or take someones knife and stab them and either way lose 27 more days. It's a constant threat, it's super dangerous here.

avid Simpson <criminaljusticerealm@gmail.com>
ı: Rick Cratty <rcratty@pacbell.net>                    Mon, Jan 12, 2026 at 12:26 F

Got it.
[Quoted text hidden]
--
**Dr. David Z. Simpson, h.c. (he/him)**
Director of The Criminal Justice Realm
E-Card | TCJR Productions | LinkedIn
Personal:(929) 228-4102 | Work: (302) 217-8387
Co-Director of The Remedy Project


**pdate from Shane today**
message

ick Cratty <rcratty@pacbell.net>                                                    Fri, Dec 19, 2025 at 12:22 F
ı: David Simpson <criminaljusticerealm@gmail.com>

Yeah, we aren't going to commissary until the week of the 29th at the earliest. I swear to God this this is about to make me go crazy. I can't get any food, the shit they serve is trash and they barely give you any and they never even give you everything that's on the menu. Then I'm sleeping basically on steel because my "mat(tress)" is just maybe 1/4 inch of foam with a plastic cover. My back and everything hurts every fucking day, I can't sleep for more than like maybe 30 minutes at a time because whatever way I'm trying to lie down I get sore. I still haven't got my property. I never got a laundry bag when I got here so I've been having to wash my clothes by hand because I can't send my shit out to get washed without a bag. When I got here they didn't give me a hat, they said they were out, and they don't sell them on the commissary here. They also don't sell nail clippers because the "captain" said not to, I have a nail clipper in my property but that's useless until I get it. They aren't doing any shu kickouts for the next 2 weeks so we're stuck on this modified bullshit for at leas 2 and a half more weeks. we were locked down yesterday, not sure why which is why I didn't call. I don't have really any food left already. This shit is so fucked up. The fucking bitch ass administration here all deserve slow deaths and I pray to God to give it to them so they won't be able to perpetrate their cruelty on anyone else. The only good thing I can say is last night the books came and my paperwork. The tietelbaum book is basically worthless for me, it's obviously not what mom thought or she didn't read the description very well. The other ones are good, I'm going to use that shit to hopefully get out of supervised release and not pay any taxes and cease to be a slave aka a "U.S. citizen" and fucking destroy these people. I don't even want to live in this God forsaken country if they think they can just foist their fake bullshit statutes on me by force, fraud, or coercion which is all they do. I haven't broken one legitimate LAW in my life in regards to other human beings and regardless people have the option to operate under the law or not, at least based on what these evil fuckers profess is the basis of their system which is the bible. I don't know what the fuck to do, but if I have to put up with this shit for much longer I'm going to lose my shit.

We will be away but will have internet access.
thank you,
Rick and JIll

The Remedy Project Inc.
Dr. David Z. Simpson h.c.
40 Rector Street
New York, NY 10006

the **REMEDY PROJECT**

Students advocating for the humanity of incarcerated people

12/02/2025

# Mr. Cratty — PLEASE DO NOT GIVE UP.
# DO NOT LET THEM WIN THIS EASILY.
# I AM HERE TO FIGHT WITH YOU.

Shane,

My name is **Dr. David Z. Simpson**, Co-Founder and Co-Director of **The Remedy Project**, and Director of **The Criminal Justice Realm**. Your parents reached out to me because they see something in you that I recognize immediately, the spirit of a fighter, someone who refuses to accept injustice, someone who stands up even when the system tries to break him. I understand exactly what you are going through, because I have lived it myself.

I spent 11 years in the federal prison system. I went through retaliation. I went through attempts to silence me. I went through officers trying to starve me out, gaslight me, isolate me, and break me. I went on a 32-day hunger strike where they refused to follow policy and procedures and would have let me die. I know what it feels like when the system moves against you, when you feel alone, when it seems like nobody is helping, and when it looks like death is the only option left.

Brother, listen to me carefully:
 **Surviving that moment is what allowed me to become the man who is writing to you today.**
 It allowed me to build The Remedy Project, an organization created specifically to protect and advocate for people like you who are standing up against corruption inside these prisons. It allowed me to walk out of prison and become a defender for those who remain behind the walls. It allowed me to fight back, legally and powerfully, on behalf of hundreds of incarcerated men and women.

And I am telling you from experience:
 **Do not take your own life.**
 **Do not hand them the victory they are desperate for.**

Your parents love you deeply. They reached out to me because they believe, and I believe, that you have the same strength, intelligence, and power that I had when I was

inside. And just like I made it out, you can make it out. Your release date is not far away. What they are doing to you is retaliation and fear. They want you gone, broken, or silent, because your voice has power.

But your life has more power than they want to admit.

If they transfer you, go. Stay calm. Survive the move. Give me the time and the opportunity to fight the way I know how to fight. Because once I step in, I will expose every violation committed against you. I will document every abuse, every act of retaliation, and I will make sure they are held accountable through administrative remedies, external reporting, and, when necessary, through civil action in federal court.

But in order for me to do this, I need you alive.
I need you focused.
I need you to fight with me, not against yourself.

Here is what I need from you **immediately**:

**1. Write me a detailed account of everything that has happened to you.**
Dates, names, places, threats, assaults, denials, retaliation, transfers — everything. Even if your memory is scattered, write what you can. Write it in pieces. Write it in parts. Just get it out and mail it to me.

**2. Do NOT harm yourself.**
If you hurt yourself, your story dies with you. Your truth dies with you. And they walk away clean.

**3. Hold on long enough for us to protect you.**
I cannot rescue a man who is no longer here.
But I *can* fight like hell for the man who survives long enough to let me do my work.

Your parents recruited me because they want the best for you. They want you alive. They want you home. They want you to have the same chance I had — to walk out of prison and turn all this pain, all this injustice, into a mission that helps others.

I believe you can do exactly that.
But it starts with one decision:
**Stay alive. Stay calm. Let us fight this battle together.**

I am here. I am working. And I will not let your suffering be ignored.

**Hold on, Shane. You are not alone.**

**Write to me here:**
The Remedy Project
Alexander Brooks, Esq,
Attorney at Law
Attention David Z. Simpson
40 Rector Street, 9th Floor,
New York, NY. 10006

Call me here: 302-217-8387   Email me here: criminaljusticerealm@gmail.com

Sincerely,

David Z. Simpson,
Co-Founder, The Remedy Project

The Criminal Justice Realm, LLC
16192 Coastal Highway, Lewes, Delaware, 19958
Phone: 929-228-4102
Email: criminaljusticerealm@gmail.com



01/02/26

Shane Crattty
43951-480
Usp Canaan
P.O. Box 300
Waymart, PA 18472

### Acknowledgment and Where Things Stand

Shane,

I wanted to write to you directly, not with legal language or paperwork, but with clarity.

What you are experiencing is real. The distress, the agitation, the fear, the anger, the exhaustion—none of that came out of nowhere, and none of it means you are "crazy" or making things up. Based on everything I've reviewed, your mental health began deteriorating after effective medical treatment was interrupted, and what followed was a series of human decisions that made things worse instead of better.

When someone is struggling mentally, and their treatment is removed or mishandled, their behavior changes. That is not a failure of character. It is a predictable human response. Instead of responding to those changes with proper care, stabilization, and support, people chose punishment, confrontation, and discipline. That approach does not calm a person who is already struggling. It escalates them. Over time, it can push anyone toward despair.

So I want to be very clear with you about this: the core of what you've been describing is not imaginary, exaggerated, or fabricated. Your reactions make sense in light of what you've been put through. That does not mean every outcome has been fair or justified, and it does not mean the system handled you appropriately. In many key moments, it did not.

Your parents are not ignoring this. They are deeply concerned, and they reached out because they knew something was wrong and they needed help understanding it. I am now actively involved, and together we are working to bring attention, accountability, and corrective action to what has happened and what is still happening.

Right now, the most important thing for you to do is hang on. Not because everything is suddenly fixed, but because things are now moving. Remedies have been prepared.

Advocacy is underway. People outside the walls are looking at your situation carefully and seriously. That takes time, and I know time feels unbearable where you are—but abandoning yourself now would only give power to the very conditions that hurt you in the first place.

You are not alone in this. You are not invisible. And you are not beyond help.

Do what you can, moment by moment, to keep yourself grounded while we work. You don't have to solve everything. You just have to stay here long enough for the pressure to begin shifting.

I'll stay in touch as things progress.

Respectfully,

Dr. David Z. Simpson, h.c.
Crisis Manager
**The Criminal Justice Realm, LLC**
**The Remedy Project Inc**
**Mailing address: 40 Rector St., 9th Floor, New York, NY 10006**

cc:

**Rick & Jill Cratty (Father & Mother) email: rcratty@pacbell.net**